Mara HENDERSON and Earlene Bryan

v.

AT & T CORPORATION and AT & T Communications, Inc.

Civil Action No. G–95–248.

United States District Court, S.D. Texas, Galveston Division.

Aug. 1, 1996.

James Duane Bashline, McLeod Alexander Powell & Apffe, Houston, TX, for plaintiffs.

Kathleen M. LaValle, Cohan Simpson Cowlishaw & Wulff, Dallas, TX, for defendants.

## ORDER

KENT, District Judge.

This employment discrimination action was originally brought by five Plaintiffs, all female, who are employed by or were formerly employed by the Defendants (referred to together as AT & T) as sales persons in a small, distinct business organization within AT & T known as the Profile Initiative Program (PIP). The original Plaintiffs reside in five cities and four states, and worked in four separate AT & T offices located in three states. On March 19, 1996, the Court partially granted AT & T's Motions to Sever and Transfer, and the claims of three of the original Plaintiffs were severed into three separate actions and transferred to more appropriate districts. The Court retained the claims of Plaintiffs Henderson and Bryan, who both worked for AT & T in the Houston office. Now before the Court is the Defendants' Motion for Summary Judgment against the claims of Plaintiff Earlene Bryan. For the reasons set forth below, the Motion is hereby **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff Bryan began working as an outside sales representative for an AT & T subsidiary in 1974, and performed well enough to receive many promotions. From November 1987 through September 1990, Bryan served as the National Account Manager (NAM) on the Department of Treasury account. In September 1990, she was promoted to Sales Manager, and, in that capacity, succeeded in winning a $138 million systems contract based on a proposal process begun while she was the Department of Treasury NAM. *See* Bryan's Response to AT & T's Motion for Summary Judgment, Exhibit A–2. In 1991, Bryan was selected to be an instructor at AT & T's University of Sales Excellence in Cincinnati, Ohio.

In August 1992, Candyce Henry, who was taking a class taught by Bryan, approached

Bryan about a NAM position. Henry, a Branch Manager in AT & T's National Accounts Branch in Houston, was interested in Bryan coming to Houston as the NAM for AT & T's Exxon account, a customer that had been giving the majority of its business to AT & T's competitors. Bryan was selected for the position after interviewing with John Wood, then Sales Vice–President of Southwest's National Accounts Branch, which included the Houston office. On November 1, 1992, Bryan began working in the Houston office, apparently in collaboration with the then-current Exxon NAM, who remained in that position until the end of the year. On January 1, 1993, Bryan assumed sole responsibility as the Exxon NAM. *See* AT & T's Motion for Summary Judgment, Exhibit A, Bryan Deposition at 121–23.

Prior to her transfer to Houston, Bryan had attained a "B" band ranking at AT & T; the next band up in rank and salary was the "C" band. Because she was not on the promotable list, Bryan could not assume the NAM position at a "C" level; she could assume the position only as a lateral transfer, rather than a formal promotion. Bryan Deposition at 57–60. While Bryan was initially hesitant to take the position as a lateral transfer, she accepted the position after Henry stated that Bryan would receive a promotion to the C level if "everything went well." Bryan Deposition at 64–65. However, AT & T did give Bryan out-of-band salary treatment, so that Bryan was paid at and received the benefits of the C level. Bryan Deposition at 69. When she accepted the position as Exxon NAM, Bryan recognized that a full promotion to the C band was dependent on her job performance in Houston and her placement on the promotable list. *See* Bryan Deposition at 65–69.

In the spring of 1993, the PIP organization was created within AT & T, and the Exxon account for which Bryan served as NAM was to be moved from the National Accounts group to the PIP sales group. Bruce Smith was appointed as PIP's Southwest Branch Manager. At the end of March 1993, Bryan met Smith for the first time. According to Bryan, a team sent by Smith purportedly to review the Exxon account and assist Bryan in preparing an account plan instead essentially audited the account, unilaterally interviewing Bryan's team members about Exxon, without Bryan's presence. *See* Bryan's Response, Bryan Affidavit at paragraphs 12–13; Bryan Deposition at XX. Bryan became concerned about the activities of the team sent by Smith, and called Smith to ask if he was thinking about replacing her on the Exxon account. According to Bryan, Smith responded by saying "I'm not sure you're good enough. Exxon is the largest account in [PIP] and represents the largest win-back opportunity in the country." Bryan Affidavit at paragraph 14; Bryan Deposition at 79–81. Bryan contends Smith had no basis for questioning her competence, given that this conversation was only the second conversation she had ever had with Smith. Bryan Affidavit at paragraph 14. By April 1993, Bryan had won some business from Exxon. While the sales were relatively small, Bryan considered them to be "turnaround sales," because they represented the first new business won from Exxon in a long time. Bryan Deposition at 132–33.

On May 1, 1993, the Exxon account was officially transferred to the PIP organization. Bryan Deposition at 87. Shortly thereafter, an advertisement in the AT & T computerized job-posting system announced an opening for the Exxon NAM position within PIP. *Id.* at 84–86; Bryan Affidavit at paragraph 19; Bryan's Exhibit A–5. Bryan contends Smith informed her the advertisement was routine, because all PIP positions were to be advertised. In mid-May 1993, at Smith's request, Bryan submitted her application for the position. Bryan Deposition at 85. Bryan alleges that, over the course of the next month, Smith repeatedly informed her that he had made no decision about the Exxon position. Bryan Affidavit at paragraph 20. On June 15, 1993, the day Smith was to interview Bryan for the NAM position, Smith informed her that he had chosen the new NAM, who would arrive on June 21. *Id.; see also* Bryan Deposition at 151–52. Smith then informed Bryan that he was making her a Branch Systems Manager and that she

would be required to report to her replacement.[1]

While the Branch Systems Manager (BSM) has some sales responsibilities, the position is primarily a technical, support position. Bryan Deposition at 159–60, 164; Bryan Affidavit at paragraph 22. After being moved into the BSM position, Bryan contends she repeatedly asked Smith and John Wood, Smith's supervisor, to relocate her into another sales position. Wood promised Bryan that Smith would work with her until they found a new position for her. Bryan Affidavit at paragraph 50. However, because Smith refused to cooperate in Bryan's search, Bryan ultimately elected to take a "Special Enhanced Leave of Absence" beginning in December 1993. In January 1994, Jim Kaufold, Bryan's replacement as the Exxon NAM, gave Bryan a "partially met objectives" job appraisal. Bryan returned to work for AT & T in December 1995; however, the record is not clear about the position to which Bryan returned.

As noted above, during her tenure as Exxon NAM, Bryan succeeded in winning back some of Exxon's business. In 1995, after Kaufold replaced Bryan as the Exxon NAM, Exxon awarded its entire telecommunications business to Sprint. *See* Bryan Affidavit at paragraph 40.

On April 14, 1994, Bryan filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). In her charge, Bryan contended AT & T discriminated against her based on her sex and age by denying her a promotion, giving her a low performance appraisal, and refusing to relocate her. Bryan received a right to sue letter on June 14, 1995. On August 18, 1995, this Court granted permission to add Bryan as a Plaintiff in this action, which was commenced on May 4, 1995. In the Amended Complaint, Bryan asserts the same claims

asserted in her EEOC charge, as well as claims of violations of the Equal Pay Act, and a state law defamation claim.[2]

## II. AT & T's MOTION FOR SUMMARY JUDGMENT

### A. Defamation

██ Bryan's defamation claims are based on Smith's statement to her that he was not sure she was good enough for the Exxon NAM position and on the statements contained in the negative performance appraisal. AT & T contends the defamation claims fail as a matter of law because they are barred by the statute of limitations, and because any allegedly defamatory statements were not published and were privileged.

In her Response to AT & T's Motion, Bryan stipulated that she would not pursue the defamation claim. *See* Bryan's Response at 2, footnote 3. However, in her Response to AT & T's Reply, Bryan "concedes that her defamation claims are barred, except to the extent that Bryan's poor performance appraisal may have been disseminated with malice or ill-will towards Bryan, or was disseminated to third persons with no interest in the subject matter of such appraisal." Bryan's Response to Reply at 2.

██ Bryan's defamation claim is based on state law, and, therefore, is governed by the Texas statute of limitations. Under Texas law, any defamation claim must be brought within one year after the defamatory statements were made. *See* Tex.Civ.Prac. & Rem.Code § 16.002(a); *Cote v. Rivera*, 894 S.W.2d 536, 542 (Tex.Ct.App.—Austin 1995). Smith's statement was made in March 1993, and Bryan received the performance appraisal in January 1994. At the very earliest, Bryan brought her claims on August 16,

---

1. Although the Branch Systems Manager was a B level position, Bryan continued to be paid at the C band level.

2. In the First Amended Complaint, it appeared that Bryan also asserted claims of fraud and intentional infliction of emotional distress. However, the Second Amended Complaint makes clear that Bryan does not seek recovery for mental anguish. *See* Second Amended Complaint,

section V ("Plaintiff Bryan, unlike the other Plaintiffs, does not seek damages for emotional pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life."). In addition, Bryan testified at her deposition that she did not claim that AT & T had defrauded her. *See* Bryan Deposition at 67, 210. Thus, as of the date of AT & T's Motion for Summary Judgment, defamation was Bryan's only remaining state law claim.

1995, the date she sought leave to file the Amended Complaint which first included her as a Plaintiff in this action. Thus, any claims based on Smith's statement to Bryan and the initial issuance of the performance appraisal are clearly time-barred. Moreover, absent identification of specific instances of publication of the performance appraisal after August 16, 1994, Bryan's vague assertions of possible but unknown instances of re-publication are insufficient to avoid summary judgment. Accordingly, because Bryan has presented no evidence that any defamatory statements were published within one year before filing her claims, her defamation claims are time-barred, and that portion of AT & T's Motion for Summary Judgment is hereby **GRANTED**.

### B. Failure to Hire Claims [3]

#### (1)

In order to pursue a claim of age or sex discrimination in Texas, a plaintiff must file a charge of discrimination with the EEOC within 300 hundred days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e–5(e)(1) (300 day requirement under Title VII); 29 U.S.C. § 626(d) (300 day requirement under ADEA). While Bryan learned on June 15, 1993 that she had not obtained the Exxon NAM position, she did not file her charge of discrimination until April 14, 1994, 303 days after June 15, 1993. Thus, AT & T contends that Bryan's failure to hire claims are time-barred under Title VII and ADEA.

■ While filing a complaint with the EEOC is a precondition to maintaining an action under Title VII or the ADEA, it is not a jurisdictional requirement, and the time period for filing may be equitably tolled or otherwise modified. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132–33, 71 L.Ed.2d 234 (1982).[4] Bryan, therefore, attempts to salvage her claims by urging the application of various equitable doctrines, including the doctrine of equitable tolling.[5]

---

3. In her Complaint and EEOC charge, Bryan separately accuses AT & T of failing to promote her and wrongfully demoting her. Thus, it was not clear whether Bryan was complaining of AT & T's failure to promote her into the C band during her tenure as the Exxon NAM *before* the Exxon account was transferred into PIP, of AT & T's failure to hire her for the Exxon NAM position within PIP, or her demotion to BSM. However, in her Response to AT & T's Motion for Summary Judgment, Bryan stated that, although different names had been given to her claims, she was complaining of AT & T's decision to hire Jim Kaufold, rather than her, as the Exxon NAM within PIP. *See* Bryan's Response at p. 15, footnote 70. Thus, the Court will use Bryan's characterization of these claims and refer to them as "failure to hire" claims.

4. To the extent the provisions of Title VII and the ADEA are similar, cases arising under one statute are applicable to cases arising under the other statute. *See, e.g., Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 587 (5th Cir. 1981) (en banc).

5. As to her claims of sex discrimination, Bryan also contends that under the "single filing rule," her claim is not barred, despite her failure to timely file an EEOC charge. Under the "single filing rule," a non-filing plaintiff may maintain her case against the defendant if one plaintiff has timely filed a charge with the EEOC and the non-filing plaintiff's claims arise from similar discriminatory treatment in the same time frame.

*See, e.g., Allen v. United States Steel Corp.*, 665 F.2d 689, 695 (5th Cir.1982). Here, Bryan contends her claims of sex discrimination are similar to and occurred in the same time frame as those of her co-plaintiff Mara Henderson and her former co-plaintiff Karen Talbert, both of whom timely filed EEOC charges. Thus, Bryan contends her untimely EEOC filing does not bar her claims of sex discrimination. The Court concludes that Bryan cannot invoke the single filing rule, because Henderson's and Talbert's EEOC charges were filed well more than 300 days after Bryan learned she was being replaced by a younger man. *See Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 (D.C.Cir.1976) (in a Title VII class action, while EEOC filing requirement is satisfied if any member of the class timely files an EEOC charge, that filing "cannot revive claims which are no longer viable at the time of filing."); *Lange v. Cigna Individual Financial Servs. Co.*, 766 F.Supp. 1001, 1002–03 (D.Kan. 1991) (single filing rule may be applied only to "non-complying plaintiffs who could have filed EEOC charges at the time the complying plaintiff filed his or her EEOC charge"); *Cavanaugh v. Texas Instruments*, 440 F.Supp. 1124, 1128 (S.D.Tex.1977) (allowing EEOC filing of class representative to satisfy filing requirement for other class action plaintiffs only if the non-filing plaintiffs "could have timely complied [with the ADEA] notice requirement as of the date of the representative plaintiff's filing."); *cf. Payne v. Travenol Lab., Inc.*, 673 F.2d 798, 813 (5th Cir.) (Title VII class action open to plaintiffs "who could have filed a timely charge with the EEOC"

Generally, a discrimination cause of action accrues, and the 300 day period begins running, when the employee learns of the adverse action taken by the employer. *Delaware State College v. Ricks,* 449 U.S. 250, 258–59, 101 S.Ct. 498, 504–05, 66 L.Ed.2d 431 (1980); *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 810 (5th Cir.1991). However, if, at the time of the adverse employment action, the employee did not have enough information to support filing a discrimination claim, the 300 day limitations period may be equitably tolled until the time the facts supporting a cause of action are or should be apparent to the employee. *See Blumberg v. HCA Management Co.,* 848 F.2d 642, 644–45 (5th Cir.1988) ("a plaintiff who is aware that she is being replaced in a position she believes she is able to handle by a person outside the protected age group knows enough to support filing a claim."), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989); *accord Conaway v. Control Data Corp.,* 955 F.2d 358, 362 (5th Cir. 1992), *cert. denied,* 506 U.S. 864, 113 S.Ct. 186, 121 L.Ed.2d 131 (1992); *Rhodes v. Guiberson Oil Tools Div.,* 927 F.2d 876 (5th Cir.1991), *cert. denied,* 502 U.S. 868, 112 S.Ct. 198, 116 L.Ed.2d 158 (1991); *Pruet Production Co. v. Ayles,* 784 F.2d 1275, 1279 (5th Cir.1986).

While Bryan learned on June 15, 1993 that she did not receive the Exxon NAM position in PIP, she contends she did not know her replacement was outside the protected sex and age groups until Kaufold reported for work on June 21, 1993. Because she did not have the information to support an age or sex discrimination claim until June 21, Bryan contends the 300 day period for her claims was tolled until that date. Bryan filed her EEOC charge within 300 days after June 21, 1993; thus, Bryan argues that her charge is timely and that her failure to hire claims are not barred under the doctrine of equitable tolling.[6]

AT & T contends Bryan must have been aware of her potential discrimination claims, given that she hired an attorney immediately after learning that she was being replaced on the Exxon account. The Court disagrees. Bryan's attorney sent AT & T a letter contending that AT & T defrauded Bryan by recruiting her to move to Houston and then denying her the PIP position a few short months later, and raising issues of promissory estoppel; there is no mention of age or sex discrimination. Thus, the letter itself indicates Bryan's lack of knowledge of the relevant facts. Moreover, the mere fact that Bryan may have been aware of her rights in general does not mean that Bryan was aware of the facts necessary to support a discrimination claim, as required by *Blumberg* and its progeny. Thus, this case presents the precise factual pattern that generally supports the application of equitable tolling. *See Blumberg,* 848 F.2d at 645 (time period for filing EEOC charge is tolled until the "facts that would support a cause of action are or should be apparent."); *Pruet,* 784 F.2d at 1279 (plaintiff who is aware that she is being replaced by a person outside the protected

at the time the earliest charge was filed), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982).

6. Initially, Bryan did not argue that equitable tolling applied to her Title VII claims, because she knew on June 15, 1993 that her replacement was a man. *See* Bryan's Response to Motion for Summary Judgment at 22, footnote 94. However, in her Response to AT & T's Reply, Bryan contends that equitable tolling applies to her age and sex discrimination claims. *See* Response to Reply at 4 ("Bryan did not meet her replacement, nor was she aware of her replacement's gender, age, or inexperience until June 21, 1993."). The Court has studied Bryan's Affidavit, upon which the initial statement that she knew her replacement was a male was based,

and concludes there is at least a question of fact as to when Bryan knew the gender of her replacement. *See* Bryan Affidavit at paragraph 21 ("Mr. Smith.... abruptly informed me that the new Exxon NAM would arrive on Monday, that he was making me a Branch Systems Manager, that I would be reporting to my replacement, and that he was going that afternoon to Exxon to inform them of the change in personnel.") and paragraph 24 ("On June 21, 1993 my replacement arrived. His name is Jim Kaufold, a white male, who was 29 years old at the time."). While the Court is extremely troubled by the inconsistent positions taken by Bryan, the Court believes the inconsistency is attributable to the carelessness of Bryan's attorney, and the Court will not, at this stage in the proceedings, punish Bryan for an apparently inadvertent error by her attorney.

age group knows enough to support filing a claim).

AT & T further argues, however, that even if the limitations period should be tolled, application of equitable tolling does not automatically give a plaintiff the full limitations period to file her charge after learning she might have a claim. AT & T contends the doctrine should be applied to toll the limitations period only for a reasonable time after the plaintiff learns she might have a claim. Here, Bryan did not file her EEOC charge until almost 300 days after she learned she might have an age or sex discrimination claim; thus, AT & T contends that the charge was not filed in a reasonable time and that the doctrine of equitable tolling cannot save Bryan's failure to hire claims.

In *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446 (7th Cir.1990), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991), the plaintiff was told on May 5, 1987 that he would be terminated sometime in July, after a replacement was hired. On July 7, 1987, the plaintiff learned that his replacement was young and inexperienced. The plaintiff filed his EEOC charge on March 4, 1988, more than 300 days after the May 5 meeting, but less than 300 after the July 7 discovery of the age of his replacement. *Id.* at 453. The plaintiff argued, *inter alia,* that the 300 day filing period should be tolled until July 7, when he first discovered that he might have been the victim of age discrimination. Because the court found no explanation for the plaintiff's failure to file his administrative charge in the eight months remaining before the expiration of the 300 day filing period, the court refused to apply the doctrine of equitable tolling to save the untimely charge:

> We do not think equitable tolling should bring about an automatic extension of the statute of limitations by the length of the tolling period or any other definite term. It is, after all, an equitable doctrine. It gives the plaintiff extra time if he needs it. If he doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations. Statutes of limitations are not arbitrary obstacles to the vindication of just claims, and there-

fore they should not be given a grudging application.... We should not trivialize the statute of limitations by promiscuous application of tolling doctrines.

. . . . .

> [A] plaintiff who invokes equitable tolling to suspend the statute of limitations must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information. [The plaintiff] failed to do this.

*Id.* at 452–53; *see also Thelen v. Marc's Big Boy Corp.,* 64 F.3d 264, 268 (7th Cir.1995) (equitable tolling "does not grant the plaintiff a fresh 300 days to file his charge once he obtains enough information to suspect discrimination; he must file his charge with the EEOC within a reasonable time."). AT & T's argument on this issue is appealing and rather persuasive. However, this Court is not convinced that the rule announced in *Cada* is the rule in the Fifth Circuit. While *Cada* has been cited by the Fifth Circuit, its requirement that equitable tolling extends the limitation period only for a reasonable time has never been articulated by the Fifth Circuit.

Clearly, the Fifth Circuit requires a plaintiff seeking to invoke the doctrine of equitable tolling to act diligently in protecting her rights. *See Wilson v. Secretary, Dep't of Veterans Affairs,* 65 F.3d 402, 404 (5th Cir.1995) ("we 'have generally been much less forgiving in receiving late filings where the claimant failed to exercise diligence in preserving his legal rights.'") (quoting *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990)); *St. Louis v. Texas Worker's Compensation Comm'n,* 65 F.3d 43, 47–48 (5th Cir.1995) ("'One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.'") (quoting *Baldwin County Welcome Center,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725–26, 80 L.Ed.2d 196 (1984)), *cert. denied* —— U.S. ——, 116 S.Ct. 2563, 135 L.Ed.2d 1080 (1996). However, the cases in which the Fifth Circuit has refused to grant equitable relief because of the plaintiff's lack of diligence generally are factually distinct from the case at bar, and do not indicate that a plaintiff entitled to toll the

limitations period until a specific date receives less than the full limitations period after that date.

Most of the cases denying relief involve the plaintiff's failure to timely file a judicial complaint or administrative appeal after receiving his right to sue letter. *See, e.g., St. Louis,* 65 F.3d at 46–48; *Wilson,* 65 F.3d at 404–05. Clearly, the circumstances that might support tolling of that limitations period are significantly different from the circumstances that might warrant tolling of the period in which to file the initial EEOC charge. The plaintiffs in these cases knew they might have a cause of action, given that they filed EEOC charges. Moreover, EEOC right to sue letters specifically inform the plaintiff of the time limit for filing suit. Thus, cases involving failure to timely file a complaint after receiving a right to sue letter would likely result in the most narrow application of the doctrine of equitable tolling. However, the Court has found no indication even in these cases that, if the limitations period were to be tolled, the plaintiff would receive less than the full limitations period.

Similarly, the Fifth Circuit cases involving equitable tolling where the plaintiff contends he did not initially know he might have a discrimination claim do not indicate that the plaintiff should receive less than the full limitations period if tolling is found to be appropriate. In *Rhodes v. Guiberson Oil Tools Div.,* 927 F.2d 876 (5th Cir.1991), *cert. denied,* 502 U.S. 868, 112 S.Ct. 198, 116 L.Ed.2d 158 (1991), the plaintiff received notice on October 15, 1986 that he was being discharged as part of a reduction-in-force; on November 19, 1986, he learned that he had been replaced by a younger worker. More than four months later, on April 28, 1987, the Plaintiff filed his EEOC charge. The state involved in *Rhodes* was a non-deferral state; thus, the plaintiff had 180 days in which to file his administrative charge. The April 28 EEOC charge was filed 195 days after the plaintiff learned of his discharge. *Id.* at 877.

Reversing the trial court's decision that the plaintiff's claim was time-barred, the Fifth Circuit concluded the limitations period should be tolled until November 19, 1986, because the plaintiff "had no reason, until discovery of [the employer's] hiring of a replacement, to suspect that [the employer] was guilty of age discrimination." *Id.* at 881. As to the requirement that the plaintiff act diligently to be entitled to equitable relief, the court noted simply that there was "no showing of lack of diligence in this case." *Id.* at 882. It appears that the *Rhodes* court was concerned with the plaintiff's diligence in discovering information surrounding his discharge, rather than his diligence in filing his charge after learning the relevant information. If the full limitations period is not available to a plaintiff who is entitled to relief under the doctrine of equitable tolling, then it seems likely the *Rhodes* plaintiff's four month delay in filing after he learned he had been replaced would have warranted some discussion.

This understanding of the diligence requirement of equitable tolling is supported by the court's decision in *Pacheco v. Rice,* 966 F.2d 904 (5th Cir.1992). In *Pacheco,* the plaintiff, a civilian employee of the Air Force, resigned after a investigation of sexual harassment charges against him resulted in a finding that the plaintiff had acted improperly and should be fired. *Id.* at 905. Because the plaintiff was a federal employee, he was required to notify an equal employment opportunity counselor of any claims of discrimination within thirty days after the allegedly unlawful action occurred. *Id.* Three years after he resigned, the plaintiff allegedly learned that another employee who had been accused of sexual harassment had been investigated under different procedures and was not discharged. Within thirty days after discovering this information, the plaintiff filed an informal complaint of racial discrimination. 966 F.2d at 905. The plaintiff's theory was that the Air Force's investigation of him was not conducted in accordance with Air Force regulations, while investigations of white employees were conducted "by the book." *Id.* at 907.

The Fifth Circuit rejected the plaintiff's argument that the limitations period should be tolled until he learned of the disparate treatment, three years after his resignation. The court stated:

The doctrine of equitable tolling has its limits, however. It does not permit plaintiffs to suspend the time for filing discrimination complaints indefinitely when they discover instances of disparate treatment of other employees months or years after their discharge. It is to be expected that some relevant facts will come to light after the date of an employee's termination— one purpose of filing an administrative complaint is to uncover them. The requirement of diligent inquiry imposes an affirmative duty on the potential plaintiff to proceed with a reasonable investigation in response to an adverse event.

*Id.* at 907 (citations omitted). The court concluded that the plaintiff could easily have discovered and raised the alleged disparate treatment at the time he resigned. Because the plaintiff "sat on his rights for three years[,] [t]his was not a case for equitable tolling." *Id.* *Pacheco*'s concern with diligence in discovering the necessary information lends support to this Court's understanding of the diligence requirement of equitable tolling. Moreover, the Court notes that in *Pacheco,* there again is no indication that the full limitations period is not available to the plaintiff in cases where tolling is appropriate.

■ Furthermore, equitable tolling is similar to, and serves substantially the same purpose as, the concept of a "continuing violation." This concept, another equitable exception to strict application of the ADEA or Title VII administrative filing requirements, is applicable in cases where the "unlawful discrimination practice manifests itself over time, rather than as a series of discrete acts." *Abrams v. Baylor College of Medicine,* 805 F.2d 528, 532 (5th Cir.1986). So long as one incident of discrimination occurred within the limitations period, the plaintiff can recover for all acts of discrimination constituting the continuing violation, even those that otherwise would be time-barred. *Id.* at 533; *see also Berry v. Board of Supervisors,* 715 F.2d 971, 979 (5th Cir.1983), *cert. denied,* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986).[7]

■ The "core idea" of the concept of a continuing violation is that "equitable considerations may very well require that the filing periods not begin to run until the facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated." *Glass v. Petro–Tex Chemical Corp.,* 757 F.2d 1554, 1560, 1561 n. 5 (5th Cir.1985). Thus, the concept of continuing violation ameliorates the strictness of the operation of the limitations periods for largely the same reasons as does the doctrine of equitable tolling. Given these similar purposes, the Court does not believe the operation of the doctrines should yield substantially different results. If the employer's conduct is found to be a continuing violation, the plaintiff is entitled to the benefit of the full limitations period after the occurrence of the act that puts the plaintiff on notice of his claim. The Court sees no reason why a plaintiff who is able to invoke the doctrine of equitable tolling should be entitled to any less protection.

AT & T cites no Fifth Circuit authority for its argument that Bryan's failure to hire claim is time-barred because she did not file her EEOC charge in a reasonable time, and the Court's independent research has located no such authority. Instead, as discussed above, the Fifth Circuit cases at least implicitly indicate if a plaintiff establishes that he is entitled to invoke the doctrine of equitable tolling, he is entitled to the full limitations after learning the necessary information. In the absence of clearer precedent from the Fifth Circuit, the Court declines to impose such a requirement in this case.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In this case, Bryan has at least established that there is a genuine issue of fact as to whether she knew or should have known that she might have an age or sex discrimination claim before June 21 and thus whether her EEOC filing was timely. *See Coke,* 640 F.2d at 595–96 (treating applicability of equitable

---

7. Bryan does not contend that AT & T's conduct amounts to a continuing violation.

tolling as question of fact). Accordingly, as to her failure to hire claims asserted under Title VII and the ADEA, AT & T's Motion for Summary Judgment against that claim on the grounds of timeliness is hereby **DE-NIED.**[8]

(2)

AT & T further contends that, even if Bryan's failure to hire claims are not time-barred, it is nonetheless entitled to summary judgment because Bryan has failed to establish that AT & T's proffered explanation for its actions is pretext. The Court strongly disagrees.

■■■■ Absent direct evidence of discrimination, a plaintiff in an age or sex discrimination case must establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir.1995). If the plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises, which the defendant must rebut by articulating a legitimate, nondiscriminatory reason for its actions. *Meinecke*, 66 F.3d at 83. If the defendant articulates a nondiscriminatory reason, the presumption of discrimination disappears from the case, and the plaintiff must prove that the proffered reasons are pretext for discrimination. *Meinecke*, 66 F.3d at 83.[9]

■■■ In a failure to hire or failure to promote case, the plaintiff generally establishes a *prima facie* case by following the framework adopted by the Supreme Court in *McDonnell Douglas*, and showing that: (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3)

she was not hired for or promoted to the position; and (4) the position was given to a person outside the protected class. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Meinecke*, 66 F.3d at 83; *Portis v. First National Bank*, 34 F.3d 325, 328 n. 6 (5th Cir.1994). Clearly, Bryan has established a *prima facie* case of age and sex discrimination based on AT & T's failure to give her the Exxon NAM position in PIP.

■■■ To rebut the presumption of discrimination that arises from Bryan's *prima facie* case, AT & T contends that the Exxon position was awarded to Kaufold over Bryan because Smith believed that Kaufold was the most qualified candidate given Kaufold's "technical proficiency and his successful record at AT & T." AT & T's Motion for Summary Judgment at 2 n. 3.[10] However, Bryan has presented ample evidence from which the jury could conclude that AT & T's explanation for its actions is pretext for discrimination. *See Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir.1996) (en banc) (to avoid summary judgment, the plaintiff must present sufficient evidence, if taken as a whole, to allow the jury to infer the actual reason for the employer's action was discriminatory).

First, AT & T's explanation for its decision has changed during the course of this litigation. In connection with the EEOC investigation of one of Bryan's former co-plaintiffs, AT & T stated that Bryan was removed because Exxon was not satisfied with her performance. *See* Bryan's Response, Exhibit F. However, in response to Bryan's Requests for Admissions, AT & T acknowledged that customer complaints were *not* the primary reason for its decision not to award the

---

8. Bryan also contends that AT & T should be equitably estopped from raising the timeliness of her EEOC charge, because AT & T repeatedly promised to help her find another position. *See* Bryan's Response to AT & T's Reply at 5–6. The Court disagrees. Equitable estoppel may be applicable in cases where the employer concealed facts or misled the employee about the reasons for the employee's termination. *See, e.g., Rhodes*, 927 F.2d at 879. The conduct about which Bryan complains is simply insufficient to warrant the application of equitable estoppel.

9. "The same evidentiary procedure for allocating burdens of proof applies to discrimination claims under both [Title VII and the ADEA]." *Id.*

10. Bryan contends this Court cannot consider Smith's declaration because it is neither sworn nor notarized. This argument is utterly without merit. 28 U.S.C. § 1746 treats as the equivalent of a sworn affidavit a declaration attested by the declarant to be true and correct under penalty of perjury. Because Smith's declaration contains the precise language required by section 1746, his declaration is as effective as a sworn affidavit.

position to Bryan. *See* Bryan's Response, Exhibit H. Moreover, in his declaration, Smith contends he chose Kaufold over Bryan because Kaufold was more qualified. Bryan's evidence of AT & T's shifting and evolving explanation for its actions is sufficient to allow the jury to discredit AT & T's proffered explanation for its actions and to conclude that the actions were motivated by illegal discrimination. *See, e.g., EEOC v. Ethan Allen, Inc.,* 44 F.3d 116, 119 (2nd Cir.1994) (jury can infer pretext from shifting explanation).

In addition, Bryan has produced evidence that Kaufold was pre-selected for the Exxon position and that she was never truly considered to be a candidate for the position. First, Bryan's Affidavit establishes that Smith's assessment of her qualifications was completely inaccurate. *See* Bryan Affidavit at paragraphs 27–29; "Exxon NAM Candidate Matrix," Bryan's Response, Exhibit A–6. Because Smith could have obtained accurate information by simply looking through Bryan's personnel file or speaking to Bryan, Smith's failure to take even these minimal steps indicates that he never considered her for the position. *Cf. Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 259, 101 S.Ct. 1089, 1097, 67 L.Ed.2d 207 (1981) ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination."). In addition, an internal AT & T document shows Bryan as holding the BSM position as of May 1, 1993, before the opening for the Exxon position was advertised on the AT & T computer system, and well before Smith informed Bryan of his decision. *See* Bryan's Response, Exhibit 5. From this evidence, a jury could reasonably conclude that AT & T's explanation is pretext and that AT & T never even considered giving the position to Bryan. *See Townsend v. Washington Metropolitan Area Transit Auth.,* 746 F.Supp. 178, 184 (D.D.C.1990) (evidence that employer preselected applicant and "selected out" the plaintiff one month before announcing its selection for the position for which the plaintiff applied is evidence that the employer's

proffered "better qualified" explanation is pretext for discrimination).

Therefore, viewing as a whole the evidence presented by Bryan, the Court concludes that a reasonable jury, if it believes Bryan's evidence, could conclude that AT & T's explanation for its actions is pretext and that discrimination was the actual reason for its refusal to give Bryan the Exxon position. Accordingly, as to Bryan's failure to hire claims asserted under Title VII and the ADEA, AT & T's Motion for Summary Judgment is **DENIED.**

### C. Remaining Claims

In addition to her failure to hire claims, Bryan also contends AT & T discriminated against her because of her sex and age in failing to relocate her to another area of the country and by giving her a low performance appraisal. These claims are in connection with AT & T's conduct after Bryan was reassigned to the BSM position; thus, her EEOC charge was timely as to the remaining claims. AT & T, however, contends it is entitled to summary judgment against these claims because Bryan cannot establish a *prima facie* case of age or sex discrimination in connection with her relocation or low appraisal claim. The Court disagrees.

■ As discussed above, absent direct evidence of discrimination, a plaintiff must establish a *prima facie* case of intentional discrimination. While use of the *McDonnell Douglas* rubric may be the most common method of establishing a *prima facie* case, it is not the exclusive method for proving intentional discrimination. *Portis,* 34 F.3d at 328 n. 6. Ultimately, in order to establish a *prima facie* case, all that is required of the plaintiff is to prove that she was not hired or otherwise subjected to an adverse employment action "under circumstances that give rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094.

■ In January 1994, Bryan received an appraisal evaluating her performance as a BSM through December 1993. The appraisal was conducted by Kaufold, Bryan's replacement on the Exxon account. Citing in-

sufficient quality of work and understanding of AT & T's products and services as evidenced by errors in two Exxon proposals, as well as "inconsistent attendance," Kaufold gave Bryan a "partially met objectives" rating, the lowest rating Bryan had ever received.[11] Bryan contends the low evaluation was part of the paper trail created by AT & T to justify its earlier actions, and that the evaluation was simply a part of AT & T's continuing discrimination against her. Bryan has submitted evidence from which the jury might conclude that the conduct outlined in the appraisal did not justify a "partially met objectives" rating under AT & T's own guidelines. *See* Bryan's Response, Exhibit I, AT & T Personnel Guide at 6 (defining "partially met" rating as appropriate where employee's "contributions and performance *frequently* did not meet the basic job requirements.") (emphasis added).

The Court believes the evidence presented by Bryan is minimally sufficient to allow the jury to infer that unlawful discrimination was the true motivation behind Bryan's appraisal. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. While Bryan has not produced evidence that similarly situated employees were not evaluated as strictly as she was, the Court does not believe that, under the particular circumstances of this case, that failure is fatal to her claim. *See Jones v. Western Geophysical Co. of America,* 669 F.2d 280, 284–85 (5th Cir.1982) (fact that discharged black plaintiff was replaced by a black employee was not fatal to plaintiff's Title VII claim, where plaintiff produced evidence supporting inference that employer hired replacement employee only to defeat plaintiff's claim and in fact was pretext for discrimina-

tion against plaintiff). Were the appraisal claim Bryan's only claim against AT & T, the Court would likely agree that Bryan has failed to establish a *prima facie* case. However, the Court must consider the appraisal claim in connection with the failure to hire claim. If the negative appraisal was not justified, the jury could reasonably infer that AT & T forced Bryan's performance into a low rating in order to create a paper trail supporting its previous refusal to give her the Exxon position. *Cf. Portis,* 34 F.3d at 330 ("This circuit will not sterilize a seemingly objective decision to [discipline] an employee when earlier discriminatory decisions have infected it.") (quoting *Vaughn v. Edel,* 918 F.2d 517, 522 (5th Cir.1990)). Accordingly, as to Bryan's performance appraisal claims, AT & T's Motion for Summary Judgment is DENIED.[12]

■ Finally, in her relocation claim, Bryan contends that Smith has a large relocation expense budget, and that he failed to help her relocate back to the East in spite of promises by John Wood, Smith's supervisor, that Smith would cooperate with her.[13] AT & T contends it is entitled to summary judgment because it has presented evidence that Smith's relocation funds were used only to relocate employees *within* the PIP organization, while Bryan is requesting that Smith use his relocation funds to place her in a position *outside* the PIP organization. *See* Smith Declaration at 2 (the PIP relocation budget "existed to pay relocation expenses of certain individuals who were hired into positions within [PIP]. The funds were not available to relocate [PIP] employees who desire to leave the [PIP] group in order to take positions elsewhere within or outside of

---

11. At AT & T, employees are given one of five ratings: far exceeded objectives; exceeded objectives; fully met objectives; partially met objectives; and unsatisfactory.

12. Moreover, it does not appear that the performance appraisal claims are really independent causes of action for which Bryan seeks recovery. It is not apparent that Bryan can establish she has suffered any damages attributable only to the negative appraisal, rather than the failure to receive the Exxon position. Instead, it appears that Bryan is really arguing that the performance appraisal is simply more evidence of AT & T's discrimination against her. However, the Court

is not foreclosing Bryan from treating the appraisal claim as a separate cause of action, provided she can present proper evidence of damages flowing from the appraisal.

13. Bryan's Response to AT & T's Motion for Summary Judgment makes clear that she complains only of Smith's failure to use his relocation budget to help Bryan move. *See* Response at 46–47. Bryan does not contend that Smith failed to help her obtain any specific position within AT & T but outside of the PIP organization, or that AT & T refused to hire her for any specific position outside PIP because of her sex or age.

AT & T."). AT & T contends that because there is no evidence that Bryan was treated differently from similarly situated employees, her claim fails as a matter of law.

Bryan argues that AT & T has not responded to her requests for information regarding the expenditures from Smith's relocation budget, *see* Bryan's Response to AT & T's Reply at 8, and AT & T does not dispute this contention. Given the insufficient factual development on this issue, the Court declines to enter summary judgment against this claim at this juncture.[14] *See* Fed. R.Civ.P. 56(f); *Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554. Accordingly, AT & T's Motion for Summary Judgment as to Bryan's relocation claims is likewise **DENIED.**

### III. Summary

In summary, AT & T's Motion for Summary Judgment is hereby **GRANTED** as to Bryan's defamation claims. As to Bryan's failure to promote claims asserted under Title VII and the ADEA, AT & T's Motion for Summary Judgment is hereby **DENIED.** Finally, AT & T's Motion for Summary Judgment against Bryan's performance appraisal claims and relocation claims are likewise **DENIED.**

**IT IS SO ORDERED.**

**DONE.**

### ORDER DENYING SUMMARY JUDGMENT

Presently before the Court is the Defendants' Motion for Summary Judgment against the claims of Plaintiff Mara Henderson. For the reasons discussed below, the Motion is hereby **DENIED.**

This employment discrimination case was filed on May 4, 1995. On November 15, 1995, a scheduling order was entered, setting the case for trial on August 12, 1996. On June 4, 1996, the Defendants filed a Motion for Summary Judgment against the claims of Plaintiff Earlene Bryan, but it was not until July 19, 1996 that the Defendants filed this Motion for Summary Judgment against Henderson's claims. Pursuant to the Local Rules of the Southern District of Texas, the Plaintiff's response to this Motion is due on August 8, 1996, only four days, and one business day, before the scheduled trial date.

While the Court did not establish a deadline for the filing of dispositive motions in this case, the Court's consistent practice is to caution attorneys to file dispositive motions early, so the Court has time to carefully consider the motions and issue its ruling a reasonable period before trial. The Court also instructs attorneys that if dispositive motions are filed close to the trial date, the Court will simply carry the motions forward to trial.

Because of the timing of this Motion, the Court must deny the Defendants' Motion for Summary Judgment at this time. As noted above, the Plaintiff's response to this Motion is not due until the virtual eve of trial. Thus, the Court clearly would not have the time to properly consider the Defendants' Motion and any Response before the scheduled trial date, nor would the Court consider granting a continuance to allow time for consideration of the Motion. The Court's time is simply too valuable and its resources too scarce to allow its already crowded docket to be manipulated by the strategically-timed filing of dispositive motions.[1] The Court is denying this Motion at this time because the Court believes it would be extraordinarily unfair to require the Plaintiff to expend considerable time and energy responding to a motion that the Court in no event will be able to consider, when that time and energy instead should be devoted to preparing for the looming trial.

Accordingly, the Defendants' Motion for Summary Judgment is hereby **DENIED.** The Defendants, of course, are free to present at trial any and all defenses raised in the

---

14. Even if Bryan could not maintain an independent claim based on Smith's failure to relocate her, evidence of Smith's failure to cooperate in her relocation quest may nonetheless be admissible to show AT & T's intent to discriminate. *See* Fed.R.Evid. 401, 404(b).

1. The Defendants' Motion relies heavily upon Henderson's deposition testimony. Given that the Defendants deposed Henderson on February 28, 1996, the Court finds it impossible to believe that the information needed to support the summary judgment motion could not have been gathered sooner.

Motion, by way of a motion for judgment as a matter of law, a post-judgment motion, or any other means that may be appropriate under the circumstances.

**IT IS SO ORDERED.**

**DONE.**