Margaret SNOOKS

v.

**UNIVERSITY OF HOUSTON, CLEAR LAKE.**

No. CIV. A. G–97–297.

United States District Court, S.D. Texas, Galveston Division.

March 6, 1998.

Gregg M. Rosenberg, Gregg M. Rosenberg & Associates, Houston, TX, for plaintiff.

Kaye Schultz, Assistant Attorney General, Austin, TX, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff brings this case alleging sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Now before the Court is Defendant's Motion for Summary Judgment. For the reasons that follow, that Motion is **GRANTED.** Consequently, all of Plaintiff's claims are **DISMISSED WITH PREJU-DICE.**

1. Plaintiff's title is "Lecturer."

2. Dr. McMullen is a white male. The position was initially offered to a white female. Although the Court will not reach the merits of Plaintiff's

## I. FACTUAL SUMMARY

Plaintiff, a white female, has been a faculty member at the University of Houston, Clear Lake ("UHCL") since 1989.[1] In the Spring of 1994, Plaintiff applied for a tenure-track assistant professor of sociology position advertised by UHCL. Plaintiff was initially informed that she was one of the three finalists recommended to be interviewed on campus for the position. However, in approximately November of 1994, when the finalists' names were presented to Provost Edward Hugetz, Plaintiff was informed that Hugetz had rejected the three finalists and had reopened the application process. Plaintiff claims that Provost Hugetz disregarded the initial finalists because none were minorities.

Thereafter, a second search was conducted to fill the assistant professor position. In November of 1994, Plaintiff was informed that she had not been named a finalist in the second search. At a March 8, 1995 faculty meeting, which Plaintiff did not attend, faculty members were told that the assistant professor position was being offered to Mike McMullen, a white male.[2] Thereafter, in accordance with standard practice, the minutes of that meeting were distributed to all members of the UHCL faculty. Plaintiff, however, contends she did not receive the minutes to that meeting. On March 24, 1995, all unsuccessful applicants for the assistant professor position were sent letters by first class mail stating that the search committee would no longer pursue their applications. Again, Plaintiff contends she did not receive this letter.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 22, 1996, claiming sex and age discrimination. At that time, Plaintiff made no allegations regarding unequal pay.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the

discrimination claims, the Court notes that, because Dr. McMullen's race is the same as that of Plaintiff, her racial discrimination claim is meritless on its face.

moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691 (S.D.Tex.1992)(noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## III. ANALYSIS

■■■ Administrative review is normally first required before judicial review of a discrimination complaint. *See* 42 U.S.C. § 2000e–5(f)(1); *Gottlieb v. Tulane Univ.,* 809 F.2d 278, 284 n. 8 (5th Cir.1987). To sustain a Title VII claim in Texas, a plaintiff must file her charge of discrimination with the EEOC within 300 days of the "alleged unlawful employment practice." *See* 42 U.S.C. § 2000e–5(e) [3]; *Anson v. University of Tex. Health Science Ctr.,* 962 F.2d 539, 540 (5th Cir.1992); *Washington v. Patlis,* 868 F.2d 172, 175 (5th Cir.1989).[4] Generally, the limitations period begins on the date that the discriminatory act occurred, and a plaintiff cannot sustain her claims based on incidents occurring before the 300–day period. *See Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989). Any act occurring outside the applicable filing period, however, "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *see Ray v. Tandem Computers, Inc.,* 63 F.3d 429, 434 n. 12 (5th Cir.1995); *Cortes v. Maxus Exploration Co.,* 977 F.2d 195, 199 (5th Cir.1992); *Merrill v. Southern Methodist Univ.,* 806 F.2d 600, 604 n. 5 (5th Cir.1986); *Downey v. Southern Natural Gas Co.,* 649 F.2d 302, 305 (5th Cir.1981). While filing a complaint with the EEOC is a precondition to maintaining an action under Title VII or the ADEA, it is not a jurisdictional requirement, and the time period for filing may be equitably tolled or otherwise modified. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132–33, 71 L.Ed.2d 234 (1982). For instance, if at the time of the adverse employment action, the employee did not

---

**3.** Pursuant to section 706(e) of Title VII, a plaintiff must file a charge of employment discrimination:

within one hundred and eighty days after the alleged unlawful employment practice occurred, ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice, ... such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.

Neither party disputes that the EEOC routinely transmitted a copy of Plaintiff's complaint to the Texas Commission on Human Rights, the Texas referral agency. Therefore, the default limitations period in this case is 300 days.

**4.** To the extent the provisions of Title VII and the ADEA are similar, cases arising under one statute are applicable to cases arising under the other statute. *See, e.g.,Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 587 (5th Cir. 1981) (en banc).

have enough information to support filing a discrimination claim, the 300–day limitations period may be equitably tolled until the time the facts supporting a cause of action are or should be apparent to the employee. *See Blumberg v. HCA Management Co.,* 848 F.2d 642, 644–45 (5th Cir.1988) (declaring that "a plaintiff who is aware that she is being replaced in a position she believes she is able to handle by a person outside the protected age group knows enough to support filing a claim"); *accord Conaway v. Control Data Corp.,* 955 F.2d 358, 362 (5th Cir.1992); *Rhodes v. Guiberson Oil Tools Div.,* 927 F.2d 876, 878–79 (5th Cir.1991); *Pruet Production Co. v. Ayles,* 784 F.2d 1275, 1279 (5th Cir.1986); *Henderson v. AT & T Corp.,* 933 F.Supp. 1326, 1332 (S.D.Tex. 1996)(Kent, J.). Plaintiff has the burden of demonstrating a factual basis to toll the limitations period. *See Blumberg,* 848 F.2d at 644–45.

■ In this case, Plaintiff concedes that she was informed prior to December of 1994 that her name had been rejected by the Provost. Moreover, Plaintiff admits that she was informed in November or December 1994 that she had not been named a finalist in the second search. She also concedes that she knew that the job was being offered to Dr. McMullen, a white male outside of her protected class. Defendant argues, and this Court agrees, that these events, in and of themselves, were sufficient notice to Plaintiff that a white male was chosen over her. To prevent summary judgment, however, Plaintiff argues that this knowledge regarding her

nonselection is insufficient to trigger the 300–day limitations period. Instead, she argues that the limitations period was not triggered until Dr. McMullen was formally introduced to the school, because until he actually began working, there was the possibility that someone else would be hired.

Even if this Court were to accept Plaintiff's assertion of ignorance, her claim is still barred because of two additional, but undeniable, events: (1) the letter of nonselection sent to Plaintiff on March 24, 1995; and (2) the minutes of the faculty meeting in which the selection of Dr. McMullen was discussed. Plaintiff contends that she did not receive the letter which formally informed her that she had not been selected for the assistant professor position. She further asserts that she did not attend the faculty meeting in which McMullen's selection was discussed, and therefore could not have known sufficient facts to bring a discrimination claim. She further contends that, although UHCL common practice is to distribute faculty meeting minutes via faculty boxes, in this instance she did not receive the minutes.

To avoid the impact of the 300–day limitations period, Plaintiff cannot simply put her head in the sand and disregard the events occurring around her.[5] Plaintiff is charged with that information that would or should be apparent to a reasonable, prudent employee.[6] The Court finds that in December 1995, upon being told that she was not a finalist in the second search and upon being told who the three finalists actually were,[7] Plaintiff was armed with the requisite knowledge to file an age discrimination claim.[8] Moreover, the

---

5. The Fifth Circuit has stated that the core idea of the equitable tolling theory is that:

   [e]quitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights. At the same time, the mere perpetuation of the effects of time-barred discrimination does not constitute a violation of Title VII in the absence of independent actionable conduct occurring within the statutory period.

   *Glass v. Petro–Tex Chem. Corp.,* 757 F.2d 1554, 1560–61 (5th Cir.1985) (quotations, citations, and footnote omitted). In *Merrill v. Southern*

*Methodist Univ.,* 806 F.2d 600, 604–05 (5th Cir. 1986), the Fifth Circuit rejected the plaintiff's argument that the statute of limitations in a Title VII case should not begin to run until the date of discovery of the alleged discriminatory practices.

6. Plaintiff is not the average employee. To the contrary, she is a highly educated individual with a doctorate degree.

7. Again, the Court reiterates that Plaintiff's racial discrimination claim is asinine on its face. All three finalists selected in the second search were white, like Plaintiff.

8. Similar to the facts in *Blumberg,* Plaintiff knew that she was a member of the protected age class, she was aware that she had not been

Court finds that a reasonably prudent person, after receiving the minutes of the faculty meeting and the formal letter, would, or should, have been on notice that discrimination had occurred.[9] To Plaintiff's peril, she failed to bring her claim with the EEOC in a timely fashion. This case is simply not one which supports the application of equitable tolling. See Blumberg, 848 F.2d at 645 (observing that the time period for filing EEOC charge is tolled until the "facts that would support a cause of action are or should be apparent."); Pruet, 784 F.2d at 1279 (noting that a plaintiff who is aware that she is being replaced by a person outside the protected age group knows enough to support filing a claim); Glass, 757 F.2d at 1561 ("The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect h[er] rights."(citations omitted)).

■ Plaintiff argues that even if this Court finds that her claims are untimely, the "continuing violation" doctrine prevents her claims from being barred. The courts have recognized an equitable exception "where the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." Waltman, 875 F.2d at 474 (quoting Abrams v. Baylor College of Medicine, 805 F.2d 528, 532 (5th Cir.1986)). In order to extend the statute of limitations period under this exception, known as a continuing violation, the plaintiff must file an EEOC charge within at least 300 days of one of the alleged acts of discrimination. See Waltman, 875 F.2d at 474; see also Delaware State College v. Ricks, 449 U.S. 250, 258–61, 101 S.Ct. 498, 504–06, 66 L.Ed.2d 431 (1980). A continuing violation tolls the statute of limitations because such statutes are meant only to prevent stale claims. See McGregor v. Louisiana State Univ. Bd. of Supervisors, 3 F.3d 850, 867 (5th Cir.1993). "Where the challenged violation is a continuing one, the staleness concern disappears." Id. (internal quotations omitted). The Fifth

Circuit has cautioned that "[t]his theory of continuing violation has to be guardedly employed because within it are the seeds of destruction of the statutes of limitation in Title VII cases." Abrams, 805 F.2d at 533.

■ The gravamen of Plaintiff's Complaint is her nonselection for the assistant professor position. However, as evidence of a continuing violation, Plaintiff now claims that she is paid less than two assistant professors, even though she performs the same tasks. Plaintiff's argument is fatally defective. A claim of unequal pay brought under Title VII must be raised with the EEOC prior to seeking judicial remedy. See 42 U.S.C. § 2000e–5(f)(1); National Ass'n of Gov't Employees v. City Public Serv. Bd. of San Antonio, 40 F.3d 698, 711 (5th Cir.1994) (noting that Title VII requires exhaustion of administrative remedies before a lawsuit can be filed). The scope of this Court's inquiry in a Title VII action is limited to the reasonably expected scope of the EEOC investigation. See Young v. City of Houston, 906 F.2d 177, 179–80 (5th Cir.1990); see also King v. Seaboard Coast Line R.R. Co., 538 F.2d 581, 583 (4th Cir.1976) ("[The EEOC] charge, enlarged only by such EEOC investigation as reasonably proceeds therefrom, fixed the scope of the charging party's subsequent right to institute a civil suit. The suit filed may encompass only 'the discrimination stated in the charge itself or developed in the course of a reasonable [EEOC] investigation of that charge.'"(footnote and citation omitted)); Johnson v. General Electric, 840 F.2d 132, 139 (1st Cir.1988); Oubichon v. North American Rockwell Corp., 482 F.2d 569, 571 (9th Cir.1973); Moore v. Sunbeam Corp., 459 F.2d 811, 826 & n. 38, 828 (7th Cir.1972). In her EEOC complaint, Plaintiff made no mention of unequal pay, and has therefore, failed to exhaust her administrative remedy on that issue. See Thornton v. Neiman Marcus, 850 F.Supp. 538, 541 (N.D.Tex.1994). Moreover, even if Plaintiff's claim of unequal pay has

---

selected for a job she considered herself qualified to perform, she knew the age and race of those selected as finalists, and she should have known the characteristics of the individual given the job. There are absolutely no facts which support any contention that Plaintiff was lulled into delaying the filing of her charge.

9. No matter which of these events triggered the limitations period, all occurred more than 300 days from the time Plaintiff filed her EEOC claim.

merit, Plaintiff offers no evidence that, for whatever reason, she had no knowledge of the unequal treatment and only learned of it within the 300 days prior to filing her EEOC claim; it is therefore similarly time barred. *See Abrams,* 805 F.2d at 532–34 (declaring that the continuing violation theory applies when actionable conduct occurs both outside and inside the limitations period, but the plaintiff, as a reasonable employee, did not know or should not have known that the time-barred acts were discriminatory until within 300 days of filing an EEOC claim). Finally, on the merits, Plaintiff's argument is ridiculous. Plaintiff admits that her job title is "Lecturer," while those who make more than her are "Assistant Professors." [10] This Court will not allow Plaintiff to bootstrap her nonselection claim under the guise of an unequal pay claim. *See id.*

For the foregoing reasons, Defendants' Motion for Summary Judgment is hereby **GRANTED,** and all of Plaintiff's claims are **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set out in the Court's Order Granting Summary Judgment issued this day, all of Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth

Circuit Court of Appeals, as may be appropriate in due course.

**THIS IS A FINAL JUDGMENT.**

---

10. Plaintiff argues that she actually does more than the assistant professors who make more than her, claiming that she teaches four classes, whereas they only teach three. This is the age-old cry of those lower on the career ladder—"we do more work, but we get less pay."