United States Court of Appeals,

Fifth Circuit.

No. 93-7673.

Judy PORTIS, Plaintiff-Appellant,

v.

FIRST NATIONAL BANK OF NEW ALBANY, MS, Defendant-Appellee.

Oct. 10, 1994.

Appeal from the United States District Court for the Northern District of Mississippi.

Before WIENER, EMILIO M. GARZA and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Judy Portis sued her employer, the First National Bank of New Albany, Mississippi ("FNB"), after FNB demoted her from loan officer to a bookkeeping position. She alleged that her demotion constituted sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (1988) ("Title VII"). The district court granted FNB's motion for judgment as a matter of law at the close of all the evidence. Portis appeals the district court's decision, claiming she had adduced sufficient evidence of intentional discrimination to overcome judgment as a matter of law. Because we agree that Portis was entitled to have her case submitted to a jury, we reverse the judgment as a matter of law and remand for a new trial.

I

Judy Portis is a long-term employee of FNB.[1] She began her

---

[1] In reviewing the grant of judgment as a matter of law, we view the evidence in the light most favorable to the non-movant.

employment with FNB in 1971, and by 1978 she was promoted to loan secretary. As a loan secretary, she consistently received high performance evaluations. In June 1988, FNB gave Portis responsibility for student loans, and C.R. "Butch" Collums became her supervisor. One year later, Portis received a promotion to loan officer, retaining student loan responsibility in addition to her new duties.

Portis' performance evaluations as a loan officer ranged from mediocre to unacceptable. A month after FNB learned that the student loan files were substantially in arrears, FNB demoted Portis from loan officer to a bookkeeping position.[2] Portis' salary accordingly decreased from $20,352 as a loan officer to $12,500 as a bookkeeper.[3]

Portis brought suit against FNB, claiming sex discrimination in violation of Title VII.[4] She testified that her two and one-half years as a loan officer did not progress well. Among other problems, she and Collums did not have an amicable working relationship. According to Portis, Collums continuously belittled

---

*See Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969); *see also infra* Part II.A.

[2]FNB's evidence indicated that Portis voluntarily resigned her position as a loan officer. Portis testified that Collums coerced her into resigning.

[3]Portis also claims that the pay cut was a discriminatory act, because her new salary is less than her previous salary as a loan secretary.

[4]Portis also brought an Equal Pay Act claim, which the district court dismissed at the close of Portis' case-in-chief. Portis does not challenge this dismissal on appeal.

2

both her and her performance.[5] She asserted that Collums told her that she would never be worth as much as a man to the bank because she was a woman. Additionally, Collums refused to provide Portis with a secretary. Portis testified that every other loan officer, all of whom were male, had his own secretary. Other witnesses, however, testified that the secretaries all belonged to a pool and worked for all the loan officers, including Portis. Portis also testified that the loan secretaries either could not or would not work for her consistently, as they completed assignments for their assigned supervisors first and had no additional time to do Portis' assignments. Other evidence indicated that although the secretaries were willing to work for Portis, she preferred to do her own secretarial work. Moreover, FNB witnesses testified that Portis refused to use the loan secretaries even when ordered to do so.

Portis did not dispute her poor performance. Rather, Portis challenged the reasons for this failure, asserting that discriminatory conduct by FNB caused her poor performance. FNB claimed that Portis lied about the status of the student loan files and failed to carry out other job responsibilities, and that these reasons for demoting Portis were legitimate and nondiscriminatory.

At the close of all the evidence, the district court granted FNB a judgment as a matter of law. The court concluded that: 1) Portis failed to present sufficient evidence of sex discrimination

_____

[5]Collums also lowered Portis' ratings contained in a prior evaluation by her former supervisors. The parties disagree as to the purpose and legitimacy of this action.

to overcome a judgment as a matter of law; and 2) Portis failed to both causally connect any purported sex discrimination with FNB's reasons for demoting her and show that FNB's reasons were pretextual.

## II

### A

"In reviewing a district court's disposition of a motion for judgment [as a matter of law], we apply the same test as did the district court, without any deference to its decision." *Little v. Republic Ref. Co.,* 924 F.2d 93, 95 (5th Cir.1991).

> "[T]he Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion[ ] is proper. On the other hand, if there is substantial evidence opposed to the motion[ ], that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion[ ] should be denied.... There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses."

*Boeing Co. v. Shipman,* 411 F.2d 365, 374-75 (5th Cir.1969) (en banc); *see also Normand v. Research Inst.,* 927 F.2d 857, 859 (5th Cir.1991) (applying *Boeing* standard).

Under Title VII, it is unlawful for any employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

4

national origin." 42 U.S.C. § 2000e-2(a)(1) (1988). A Title VII plaintiff carries "the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977).[6] This inference arises "only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco,* 438 U.S. at 577, 98 S.Ct. at 2949-50.

A plaintiff may use either direct or circumstantial evidence to prove a case of intentional discrimination. *Aikens,* 460 U.S. at 714 n. 3, 103 S.Ct. at 1481 n. 3. Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in *McDonnell Douglas.*[7] This test establishes a prima

---

[6]The customary rubric for a prima facie case includes the following elements: 1) membership in a protected class; 2) that the plaintiff was qualified for the position at issue; 3) that the defendant made an adverse employment decision despite the plaintiff's qualifications; and 4) that the plaintiff was replaced with a person not a member of the protected class. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). However, this is not the only means of demonstrating a prima facie case; *McDonnell Douglas* "did not purport to create an inflexible formulation." *International Bhd. of Teamsters,* 431 U.S. at 358, 97 S.Ct. at 1866; *see also United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

[7]1) The plaintiff must first demonstrate a prima facie case of discrimination; 2) if successful, the burden of production shifts to the defendant to show a legitimate and nondiscriminatory basis for the adverse employment decision; and 3) finally, the plaintiff must show that the defendant's offered reason is pretext or unworthy of belief. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Davis v. Chevron U.S.A.,*

facie case by inference, but it is not the exclusive method for proving intentional discrimination. "[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621-22, 83 L.Ed.2d 523 (1984).[8]

"Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption." *Brown v. East Miss. Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir.1993). In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face. *See Vaughn,* 918 F.2d at 521; *Miles v. M.N.C. Corp.,* 750 F.2d 867, 870 (11th Cir.1985) (holding "discriminatory statements and admissions" to be direct evidence).

Portis contends that, because she had adduced sufficient evidence of intentional discrimination, the district court erred in granting FNB's motion for judgment as a matter of law. Portis testified about several statements by Collums, indicating his intent to discriminate against her because of her sex. According

*Inc.,* 14 F.3d 1082, 1087 (5th Cir.1994) (applying *McDonnell Douglas* test); *Vaughn v. Edel,* 918 F.2d 517, 521 (5th Cir.1990) (same).

[8]*See also Davis,* 14 F.3d at 1085 ("If there is direct evidence that an employer placed substantial negative reliance on an illegitimate criterion in reaching an employment decision, however, resort to inferential methods of proof is unnecessary."); *Vaughn,* 918 F.2d at 521 ("When, however, direct credible evidence of employer discrimination exists, a different process appertains."); *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 773 (11th Cir.1982) (holding that "[w]here a case of discrimination is made out by direct evidence, reliance on the four-part test developed for circumstantial evidence is obviously unnecessary").

6

to Portis, Collums refused her a secretary because she was a woman and told her she would never be worth as much as a man to the bank, because she could not participate in the community. Because Collums had deprived her of a secretary, Portis testified, she had to do her own clerical work. Consequently, she fell behind in her other work, and FNB ultimately demoted her. As this case was decided on a motion for judgment as a matter of law, Portis is entitled to all "reasonable inferences," including that if she had been given a secretary, her performance would not have been deficient. We cannot say that a reasonable jury would not under any circumstances find that Portis' poor performance was a product of FNB's earlier discriminatory deprivation of a secretary. Given that standard, Portis has adduced sufficient evidence of intentional discrimination to warrant presentation of her case to a jury.

B

FNB, nonetheless, argues that Portis' testimony does not constitute direct evidence sufficient to overcome a motion for judgment as a matter of law because 1) it is merely her personal belief that Collums intended to discriminate against her; and 2) Portis failed to show a causal connection between Collums' alleged discriminatory intent and her demotion.

First, FNB contends that Portis only presented evidence of her personal belief that FNB discriminated against her. "[G]eneralized testimony by an employee regarding his subjective belief that his discharge was the result of age discrimination is insufficient to

7

make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his discharge." *Elliott v. Group Medical & Surgical Serv.,* 714 F.2d 556, 566 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984) (citing *Houser v. Sears, Roebuck & Co.,* 627 F.2d 756 (5th Cir.1980)); *see also Little,* 924 F.2d at 96 (finding subjective belief of little value toward proving a prima facie case). The district court held that Portis' testimony regarding Collums' statements was exactly this sort of subjective belief. We disagree.

In *Elliott,* the plaintiffs "offered no more than conclusory statements of age discrimination. On cross-examination each [plaintiff] admitted that he was never told that age was a factor in his discharge."[9] Instead, the *Elliott* plaintiffs only *believed* they had been terminated because of age. *Id.* Portis, in contrast, testified that Collums told her that she would not have a secretary *because she was a woman.* She also testified that he told her she would be paid less *because she was a woman.* Unlike those in *Elliott,* these statements require no additional inference to

---

[9]*Id.* at 566. *See also Langley v. Jackson State Univ.,* 14 F.3d 1070, 1075 (5th Cir.1994) (holding that evidence of supervisors' race-consciousness was not direct evidence because it did not show that the decisions were because of that race-consciousness), *petition for cert. filed,* 62 U.S.L.W. 3794 (U.S. May 13, 1994); *Guthrie v. Tifco Indus.,* 941 F.2d 374, 378-79 (5th Cir.1991) (finding statements relating to age of employees not direct evidence because they were too vague and open to other plausible interpretations), *cert. denied,* --- U.S. ----, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992); *Little,* 924 F.2d at 96 (rejecting subjective belief because the "record contains absolutely no manifestations of this alleged [belief]").

8

conclude that she was wrongfully treated because of her sex. Consequently, *Elliott* does not apply.[10]

FNB further argues that, because Portis was demoted for poor performance, Portis cannot show the necessary causal connection between Collums' alleged discriminatory intent and her demotion. Although Portis concedes that her performance was unacceptable, Portis contends that her poor performance was itself the product of discrimination, thereby making the decision to demote her

[10]FNB also contends that Portis' testimony cannot, without corroboration, be sufficient direct evidence to overcome a motion for judgment as a matter of law. When reviewing a judgment as a matter of law, however, the question is not whether the plaintiff's testimony on its own can satisfy the burden of persuasion, but whether it is enough to establish intentional discrimination. In this context, the plaintiff's uncorroborated testimony is "sufficient to cast on the defendant the burden of producing admissible evidence [of nondiscriminatory motivation]." *Jackson v. City of Killeen,* 654 F.2d 1181, 1184 (5th Cir. Unit A 1981). *See also Williams v. Williams Elecs., Inc.,* 856 F.2d 920, 923 n. 6 (7th Cir.1988) (finding plaintiff's testimony alone sufficient to establish prima facie case); *Yarbrough v. Tower Oldsmobile, Inc.,* 789 F.2d 508, 512 (7th Cir.1986) (same). The fact that Portis' case-in-chief consists solely of her own testimony does not prevent her from establishing intentional discrimination.

    FNB further argues that Portis' testimony cannot overcome the quantum of evidence provided by FNB because it is "self-serving and speculative testimony ... subject to especially searching scrutiny." *Elliott,* 714 F.2d at 564; *New England Merchants Nat'l Bank v. Rosenfield,* 679 F.2d 467, 473 (5th Cir.1982) (rejecting "unsupported self-serving testimony that flies in the teeth of unimpeachable contradictory evidence and universal experience"), *cert. denied,* 459 U.S. 1173, 103 S.Ct. 819, 74 L.Ed.2d 1017 (1983); *Ralston Purina Co. v. Hobson,* 554 F.2d 725, 728-29 (5th Cir.1977) (same). FNB's assessment of the law is correct, but it errs in its application. In the *Elliott* line of cases, the plaintiffs' testimony failed because it alone stood against unimpeached and uncontradicted opposing testimony. Portis, however, challenged the testimony of the FNB witnesses. Because FNB has neither uncontradicted nor unimpeached evidence, *Elliott*'s bar does not apply.

9

discriminatory. We have stated:

> Had [this employer] treated [the employee] in a color-blind manner ... [she] may have been fired ... for unsatisfactory work; on the other hand, she might have sufficiently improved her performance so as not to be one of the two "lowest ranked' employees, thereby avoiding termination.... This circuit will not sterilize a seemingly objective decision to [discipline] an employee when earlier discriminatory decisions have infected it.

*Vaughn v. Edel,* 918 F.2d 517, 522 (5th Cir.1990). In *Vaughn,* the employer, Texaco, did not give Vaughn, a black female attorney, accurate employment evaluations and attendant counseling because of her race. When Texaco eventually made a reduction in workforce on the basis of performance, Vaughn had one of the lowest ratings, and Texaco dismissed her. On appeal, this court concluded that the district court committed clear error in focusing on the final act of firing instead of the earlier discriminatory actions leading up to that firing.

FNB claims that it demoted Portis for affirmatively misleading her superiors about the status of her files and for failing to stay current on applicable government regulations. To meet its burden, though, FNB must show that it would have demoted *any* loan officer who acted in a similar manner, not just Portis, whose poor performance allegedly resulted from discriminatory animus. Although an employer may penalize employee misconduct, it must apply the penalties equally. *Levitt v. University of Texas at El Paso,* 847 F.2d 221, 227 n. 14 (5th Cir.), *cert. denied,* 488 U.S. 984, 109 S.Ct. 536, 102 L.Ed.2d 567 (1988); *see also Kientzy v. McDonnell Douglas Corp.,* 990 F.2d 1051 (8th Cir.1993) (refusing to allow misconduct to negate discrimination where other employees

10

were not disciplined for the same misconduct); *Corley v. Jackson Police Dep't,* 639 F.2d 1296, 1299 (5th Cir. Unit A 1981) ("[P]laintiffs' discharges are unlawful despite their wrongdoing, if it is shown that, for impermissible reasons, they were singled out for discriminatory treatment—either for discharge from among others equally guilty, or for investigation from among others equally suspected."). Portis accordingly argues that, even if FNB's characterization of her performance is true, FNB had excused similar acts and omissions by other, male bank officers.[11] FNB disputes this response, but a jury could reasonably conclude on the record that FNB might not have disciplined any employee who acted as Portis did, if the jury chose to believe Portis' version rather than FNB's. Again, this becomes an issue of credibility, and consequently falls squarely within the province of the jury. *See Boeing Co. v. Shipman,* 411 F.2d 365, 375 (5th Cir.1969) (en banc) ("[I]t is the function of the jury ... to weigh conflicting evidence and inferences, and determine the credibility of witnesses.") We therefore hold that Portis has adduced sufficient evidence of intentional discrimination to require presentation to a jury, and that the district court erred in granting FNB's motion for judgment as a matter of law.[12]

---

[11]Portis' testimony and her cross-examination of FNB witnesses suggested that, although Jerry Dulaney, another bank officer, failed to comply with IRS regulations and made false reports to cover up his failure, FNB did not discipline Dulaney. FNB's evidence on this issue indicated no false reports and no need for disciplinary action.

[12]Our holding that Portis has sufficiently established a case of intentional discrimination to withstand a judgment as a

11

C

On appeal, Portis also argues that even if she loses on her demotion claim, she has adduced sufficient evidence to prove a claim of a "hostile work environment," as defined by *Harris v. Forklift Systems, Inc.,* --- U.S. ----, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

> "A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality."

--- U.S. at ---- - ----, 114 S.Ct. at 370-71. *See also Meritor Savings Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (concluding that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment"); *Carmon v. Lubrizol Corp.,* 17 F.3d 791, 794 (5th Cir.1994) (discussing *Harris* standard).

---

matter of law should not be interpreted as an indication of the strength of either party's case. Also, because this case has not yet been submitted to a jury, we do not comment on how the district court should apply *Price Waterhouse v. Hopkins,* 490 U.S. 228, 241, 242, 109 S.Ct. 1775, 1785, 1786, 104 L.Ed.2d 268 (1989) (holding (1) that, if both gender and legitimate grounds influence an employer's decision, that decision is "because of" gender; but (2) that the employer will not be liable, if it can prove that the decision would have been the same absent the impermissible factor). And, because we reverse the judgment of the district court, we do not address FNB's request for sanctions, based on its allegation that Portis' appeal is frivolous. *See* Fed.R.App.P. 38.

If Portis did not raise a hostile work environment claim in the district court, we do not review it on appeal. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("It is the general rule ... that a federal appellate court does not consider an issue not passed on below."). A party has presented an issue in the trial court if that party has raised it in either the pleadings or the pretrial order, or if the parties have tried the issue by consent. *See Myrick v. City of Dallas,* 810 F.2d 1382, 1386 (5th Cir.1987) (holding a claim not properly raised if not in pleadings, pretrial order, or evidence presented); *Laird v. Shell Oil Co.,* 770 F.2d 508, 510-11 (5th Cir.1985) (refusing to consider an issue not raised in the pleadings, pretrial order, or trial evidence). The raising party must present the issue so that it places the opposing party and the court on notice that a new issue is being raised. *See Simon v. United States,* 891 F.2d 1154, 1158 (5th Cir.1990) (affirming district court's finding that a party had waived an issue because the record did not put opponent or court on notice).

Portis did not raise a hostile work environment claim in her pleadings,[13] nor does this issue clearly appear in the pretrial order. *See Valley Ranch Dev. Co. v. F.D.I.C.,* 960 F.2d 550, 554 (5th Cir.1992) (waiving claims omitted from pretrial order);

---

[13]Portis' complaint seeks damages for "sex discrimination" resulting from "inferior working conditions," that is, "failure to furnish Plaintiff with a secretary." The prayer asks for "reinstatement to her position as a loan officer" and "actual and punitive damages."

*Flannery v. Carroll,* 676 F.2d 126, 129 (5th Cir.1982) (same).[14]  An affirmative duty exists at the pretrial conference for each party to allege clearly all factual and legal bases upon which the party wishes to litigate the case.  *See Hodges v. United States,* 597 F.2d 1014, 1017-18 (5th Cir.1979) (refusing to find additional issue raised because pretrial order unclear);  6A Wright, Miller & Kane, Federal Practice and Procedure § 1527.  Further, the pretrial order controls the course of the trial.  *See* Fed.R.Civ.P. 16 ("This order shall control the subsequent course of the action....").   In examining Portis' version of the facts and the issues in contest as set out in the pretrial order, we cannot distinguish a "hostile work environment" issue from Portis' "unequal treatment" issue.[15]  Claims of a hostile work environment also relate to the claims of disparate treatment raised in Portis' pleadings.  We cannot say that the pretrial order put FNB on notice that Portis intended to

---

[14]A plaintiff need not use the magic words "hostile work environment" to raise this claim.  *See Boutros v. Canton Regional Transit Auth.,* 997 F.2d 198, 204 (6th Cir.1993) (finding claim properly raised even though "hostile work environment" words not utilized).

[15]The pretrial order lists Portis' demotion claim, but it does not list any hostile work environment claim.  The relevant contested issues of fact include:  Item 9(f)—"Was Plaintiff's inability to properly function as a loan officer caused by discrimination against Plaintiff because of her sex?";  Item 9(g)—"Was plaintiff's failure to report the degree to which she was behind in her work the result of harassment of her based upon her sex?."  The relevant contested issues of law include:  Item 10(d)—"If plaintiff was unable to properly perform her duties as a loan officer because of harassment of her based upon her sex, have her rights as an employee, under Title VII of the Civil Rights Act of 1964 been violated?"

14

raise two alternatives theories of recovery.[16]

Portis nonetheless contends that the parties actually tried the hostile work environment claim by consent. Even if waived in the pretrial order, parties may try a new issue by express or implied consent. *See* Fed.R.Civ.P. 15(b).[17] The record does not support a finding of express consent by FNB. Moreover, trial by implied consent turns on:

> whether the parties recognized that the unpleaded issue entered the case at trial, whether the evidence that supports the unpleaded issue was introduced at trial without objection, and whether a finding of trial by consent prejudiced the opposing party's opportunity to respond.

*United States v. Shanbaum,* 10 F.2d 305, 312-13 (5th Cir.1994); *see also Haught v. Maceluch,* 681 F.2d 291, 305-06 (5th Cir.1982). As a general rule, a party impliedly consents by failing to object to evidence supporting issues that go beyond the pleadings. *Haught,* 681 F.2d at 305.

Nonetheless, unless we could reasonably expect FNB to have recognized that the new issue was being raised, we cannot hold that

[16]Nor can we presume that FNB would have tried its case in the same manner if Portis had raised the issue in the pretrial order. *See Flannery,* 676 F.2d at 131 ("We simply cannot know how the trial would have proceeded.").

[17]Rule 15(b) provides in relevant part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.... [F]ailure so to amend [the pleadings] does not affect the result of the trial of these issues.

Fed.R.Civ.P. 15(b); *see also Flannery,* 676 F.2d at 131 (stating purpose of Rule 15(b) is to base the outcome on the trial and not the pleadings).

FNB consented to trial of a hostile work environment claim. *See Moody v. FMC Corp.,* 995 F.2d 63 (5th Cir.1993) (refusing to find implied consent where evidence presented was not recognizable as an independent issue); *see also Domar Ocean Transp. Ltd. v. Independent Ref. Co.,* 783 F.2d 1185, 1188 (5th Cir.1986) (same); *Jimenez v. Tuna Vessel Granada,* 652 F.2d 415, 421 (5th Cir. Unit A 1981) (same). Recognition of whether an unpleaded issue has entered the case at trial "depends on whether the evidence supporting the issue is also relevant to another issue in the case." *Shanbaum,* 10 F.3d at 313. If the evidence overlaps in this fashion, it does not equate to implied consent " "absent a clear indication that the party who introduced the evidence was attempting to raise a new issue.' " *Haught,* 681 F.2d at 305 (quoting *International Harvester Credit Corp. v. East Coast Truck,* 547 F.2d 888, 890 (5th Cir.1977)).

Evidence of a hostile work environment claim may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* --- U.S. at ----, 114 S.Ct. at 371. Portis did introduce evidence supporting these factors.[18] She introduced each of these items, however, as part of her proof of her disparate treatment claim, that is, to prove the discriminatory nature of her demotion. Moreover, FNB directed all

---

[18]Portis testified that Collums belittled her performance and person, that he criticized her so much that she could not sleep, "nervous ate," and cried frequently.

evidence presented in response toward rebutting Portis' assertions of discriminatory intent and causation.  Consequently, we cannot say that FNB had any reason to believe that Portis was injecting a hostile work environment claim into the case.[19]  Consequently, FNB did not consent to trial of a hostile work environment claim in the trial court.  Because Portis did not raise her hostile work environment claim in either her pleadings or the pretrial order, and the parties did not try the issue by consent, we hold that Portis did not properly present a claim of hostile work environment in the court below.  Accordingly, we do not address whether the district court properly granted judgment as a matter of law against Portis on this claim.[20]

### III

For the foregoing reasons, we REVERSE the grant of judgment as a matter of law and REMAND to the district court for further proceedings consistent with this opinion.

---

[19]*See Moody*, 995 F.2d at 66 (finding no consent where evidence on new issue was relevant to defenses already raised in the pleadings);  *Domar*, 783 F.2d at 1188 (holding that implied consent was properly found only when party should reasonably have believed that a new issue had been presented);  *Jimenez*, 652 F.2d at 421 (stating that evidence relevant to issues already raised did not give fair notice of a new claim).  Consequently, FNB's failure to object to any material being outside the scope of the pleadings does not imply consent.

[20]We do not comment on whether the district court on remand should allow Portis to raise a hostile work environment claim.

17