In re ADVANCED SYSTEMS, INC.

Civ.A. No. 00–2985.
Bankruptcy No. 98–10285.

United States District Court,
E.D. Louisiana.

Jan. 18, 2001.

Clayton J. Swank,III, and Associates, APLC, Madisonville, LA, for Advanced Systems, Inc.

T. Jay Seale, III, Seale, Daigle & Ross, LLP, Hammond, LA, George Lewis Clauer, III, Seale Daigle & Ross, Baton Rouge, LA, for Parish National Bank.

Lloyd Noble Shields, Stuart Glen Richeson, Shields Mott Lund, LLP, New Orleans, LA, for Historic Construction, Inc. and National Union Fire Insurance Company of Pittsburg, PA.

David V. Adler, Metairie, LA, trustee, pro se.

### ORDER AND REASONS

VANCE, District Judge.

Before the Court are three appeals from the August 4, 2000 judgment of the United States Bankruptcy Court, Eastern District of Louisiana in the matter of Advanced Systems, Inc. Appeals were filed by Advanced Systems, Inc., Parish National Bank, and Historic Constriction Incorporated and National Union Fire Insurance Company of Pittsburgh, PA. For the following reasons, the Court affirms the Bankruptcy Court.

## I. Background

In late 1996, Cotton Mill Limited Partnership decided to renovate an old warehouse situated in the Warehouse District of New Orleans, Louisiana, into apartments and condominiums. The Partnership selected Historic Construction Incorporated as the general contractor. HCI employed ASI in October or November 1996 to sand the floors on a time and materials basis. HCI then decided in February 1997 to enter into a painting and gypsum board subcontract with ASI.

The Bankruptcy Court found a written subcontract dated February 1, 1997, a copy of which ASI's corporate officers received around March 31, 1997. (Bankr. Ct.'s Mem.Op. at 3.) ASI and HCI, however, did not sign the subcontract until August 9, 1997 and August 11, 1997, respectively. Between October 1996 and August 1997, HCI and ASI negotiated the basis, price, and scope of the subcontract. Notwithstanding these protracted negotiations, the only difference between the February and August 1997 subcontracts was a reduction in the retainage to ten percent.

Both versions stated at Article 11 that the "[c]ontract shall not be assigned by Subcontractor without first obtaining permission in writing from Contractor." (*Id.* at 4.)

In March 1997, ASI entered into a financing arrangement with Parish National Bank called a "cash manager line of credit." The arrangement was essentially an accounts receivable financing and included an assignment of ASI's accounts receivable, including the accounts receivable due under its subcontract with HCI, to PNB. On March 7, 1997, PNB filed a financing statement regarding its security interest in ASI's property. PNB sent a letter on June 11, 1997 to HCI notifying it of the assignment and directing HCI to forward payment on ASI's invoices to PNB. Upon receipt of this letter, HCI contacted PNB by telephone stating its objections to the assignment of the accounts receivable. HCI reiterated those objections on August 12, 1997.

A document entitled Corporate Authorization Resolution was admitted into evidence at trial. It represented that ASI's Board of Directors met on January 1, 1997 and authorized the corporate officers to enter into financial agreements with PNB. The resolution was dated March 28, 1997. The Bankruptcy Court found, however, that none of the directors remembered meeting on January 1, 1997 and that the evidence indicated that the resolution "probably was not completely filled out when it was dated." (*Id.* at 5.) Notwithstanding the January 1, 1997 meeting, the Bankruptcy Court found that ASI's Board of Directors did meet on September 5, 1997 and executed a valid Corporate Authorization Resolution. That resolution ratified the March 1997 loan agreement, approved a proposed assignment to PNB of the subcontract with HCI, and granted the corporate officers the proper authority to enter into agreements with PNB. Moreover, on September 5, 1997, ASI actually assigned its rights in the subcontract with HCI to

PNB as additional security for advances made. ASI also executed a promissory note in favor of PNB in the amount of $30,334.35 for a loan from PNB advanced to cover ASI's payroll.

On August 7, 1997, HCI sent ASI a letter putting it on notice of defaults under the contract. To correct the identified problems, the letter mandated implementation of certain remedial measures, including HCI's paying all vendors and purchasing all materials. This remedial attempt was to last one month, with ASI's summary termination if the solution proved unworkable. The problems, however, continued, and, on December 4, 1997, HCI sent ASI a termination letter.

On October 22, 1997, PNB filed suit against HCI in the Twenty–Second Judicial District Court for the Parish of St. Tammany seeking to enforce its security interest in ASI's accounts receivable. The case was ultimately transferred to the Civil District Court for the Parish of Orleans on venue grounds. On January 7, 1998, ASI filed a statement of lien and privilege under the Louisiana Private Works Act against HCI. Two weeks later, on January 23, 1998, ASI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. After ASI sought relief in bankruptcy, the case proceeded as an adversarial proceeding in the bankruptcy court.

After a five-day trial, the Bankruptcy Court issued a judgment on August 4, 2000. The Bankruptcy Court recognized the superior lien of PNB on ASI's accounts receivable, entered judgment in favor of PNB and against HCI and National Union in the amount of $44,854.00 plus interest from the date of judicial demand, and dismissed ASI and HCI's claims.

ASI, PNB, HCI, and National Union now appeal. ASI presents five issues on appeal: (1) Whether ASI should be awarded $30,600.00 for the equipment confiscated by HCI; (2) whether HCI terminated ASI without cause; (3) whether the Bankruptcy Court should have awarded ASI

damages; (4) whether the Bankruptcy Court should have awarded ASI compensation for extra work, change orders, and retainage; and (5) whether the Bankruptcy Court should have awarded ASI interest and attorney fees. PNB also presents five issues on appeal: (1) Whether PNB may recover its entire security interest lien in the amount of $188,349.99; (2) whether it may recover $30,334.35 advanced to ASI on September 5, 1997 to cover the payroll; (3) whether the Bankruptcy Court properly excluded the $74,559.55 retainage from the judgment; (4) whether the Bankruptcy Court incorrectly credited HCI $68,936.34; and (5) whether PNB should have been awarded interest from the date each invoice became due, attorney's fees, and costs.

HCI and National Union present three issues on appeal: (1) Whether they may setoff $24,982.10 paid by HCI to ASI's suppliers; (2) whether the anti-assignment clause contained in the subcontract between HCI and ASI prohibited ASI from assigning its accounts receivable to PNB; and (3) whether National Union is liable to PNB.

## II. Discussion

### A. Jurisdiction

This Court properly has jurisdiction over this case pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001. *See* 28 U.S.C. § 158(a); FED.R.BANKR.P. 8001.

### B. Standard of Review

 The standard of review of a bankruptcy appeal by a district court is the same as when a Court of Appeals reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2). Accordingly, the Court reviews the Bankruptcy Court's finds of fact for clear error and its conclusions of law de novo. *See Dodson v. Huff* (In re *Smyth*), 207 F.3d 758, 761 (5th Cir.2000). Under the clearly erroneous standard, a bankruptcy court's findings of

fact will be reversed only if, after considering all of the evidence, the appellate court is left with the definite and firm conviction that a mistake has been made. *See Affiliated Computer Sys., Inc. v. Sherman,* (In re *Kemp* ), 52 F.3d 546, 550 (5th Cir.1995). *See also* FED.R.BANKR.P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

### C. Issues Properly Before the Court

PNB, HCI, and National Union dispute which issues are properly before this Court. PNB argues HCI and National Union improperly raise the Louisiana Private Works Act, Louisiana Revised Statutes sections 10:9–318(2) and 14:202, and National Union's defenses to its obligations under its surety policies as affirmative defenses for the first time in their appeal brief. HCI and National Union contend that PNB improperly raises a claim to recover the September 5, 1997 loan of $30,334.35, even though the Bankruptcy Court ruled on the issue, because PNB did not raise the issue in its complaint or the pretrial order, and no evidence regarding the issue was presented at trial.

 Generally, courts will not consider matters presented for the first time on appeal. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). *See also Quenzer v. United States* (In re *Quenzer* ), 19 F.3d 163, 165 (5th Cir.1993). A party presents an issue in the trial court if it raises the issue "in either the pleadings or the pretrial order, or if the parties have tried the issue by consent." *Portis v. First Nat'l Bank of New Albany, Miss.,* 34 F.3d 325, 331 (5th Cir.1994). The rationale for this general policy is to ensure that the parties had the opportunity to offer all of the evidence they believe relevant to the issues. *See Singleton,* 428 U.S. at 120, 96 S.Ct. at 2877; *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1163 (5th Cir.1992) ("If 'consideration of the newly raised issue in the trial court would have resulted in additional facts being developed there, the rationale for the application of the general rule applies, and the issue will not be considered by the appellate court.'" (quoting *Volkswagen of Am., Inc. v. Robertson,* 713 F.2d 1151, 1166 (5th Cir. 1983))).

 Any general rule is subject to exceptions, and the Court may exercise its discretion to consider an issue raised for the first time on appeal, "if the issue is purely a legal issue." *Alford,* 975 F.2d at 1163 (quoting *Citizens Nat'l Bank v. Taylor* (In re *Goff* ), 812 F.2d 931, 933 (5th Cir.1987)). *See also Singleton,* 428 U.S. at 121, 96 S.Ct. at 2877. "It is the unwavering rule in this Circuit," however, that those new issues will only be reviewed for "plain error." *McCann v. Texas City Ref., Inc.,* 984 F.2d 667, 673 (5th Cir.1993) (citing *Shipman v. Central Gulf Lines, Inc.,* 709 F.2d 383, 388 (5th Cir.1983)). In other words, this Court "may correct a plain error only if it seriously affected the 'fairness, integrity, or public reputation' of the judicial proceedings." *Hudson v. Raggio & Raggio, Inc.* (In re *Hudson* ), 107 F.3d 355, 357 (5th Cir.1997) (quoting *United States v. Calverley,* 37 F.3d 160, 164 (5th Cir.1994) (en banc)). A party may not raise an issue for the first time on appeal merely for an opportunity to try to prevail on a different theory. *See Alford,* 975 F.2d at 1163.

### 1. HCI and National Union's Affirmative Defenses

#### a. Additional Legal Authority

 PNB asserts that HCI and National Union improperly raise three affirmative defenses—the Louisiana Private Works Act and Louisiana Revised Statutes sections 10:9–318(2) and 14:202—for the

first time in their appeal brief. PNB's assertion, however, mischaracterizes the arguments made by HCI and National Union. HCI and National Union do not present new and separate issues for consideration; rather, they simply offer additional legal authority for their contention that HCI could pay ASI's material suppliers directly. *See Walden v. McGinnes* (In re *Walden* ), 12 F.3d 445, 451 n. 11 (5th Cir. 1994) ("[B]ecause it is not a separate issue, and instead is simply additional legal authority to consider in reaching our decision, we consider it here.").

In the pretrial order, HCI and National Union identified as a contested issue of law "[w]hether the general contractor has a right to apply the contract funds to the completion of the contract, prior to recognizing any assignment of those funds." (Pretrial Order at 18.) During the trial, the Bankruptcy Court discussed with counsel for PNB and HCI whether HCI had to route its invoice payments through PNB to ASI's materialmen and suppliers. (Oct. 28, 1998 Hr'g Tr. at 129–30.) HCI also presented testimony on January 8, 1999 discussing HCI's right to withhold money from ASI to pay ASI's vendors. (Jan. 8, 1999 Trial Tr. at 12–14.) In its post-trial memorandum, HCI argued that "any payments made to material suppliers cannot be included in the amounts which PNB claims[ ] because these sums were not properly due and payable to ASI...." (HCI's Post–Trial Mem. at 4, 15–16.)

Whatever their merits, the three affirmative defenses that HCI and National Union now present to the Court on appeal merely provide additional legal authority for their original proposition—that HCI could pay ASI's material suppliers directly. First, HCI and National Union cite section 10:9–318(2) for the proposition that, regardless of when ASI assigned its accounts receivables to PNB, HCI may assert "the contractual requirement that ASI pay its material suppliers as a defense under [section] 10:9–318(2)." (HCI & National Union's Appeal Brief at 10.) Second, they

cite the Louisiana Private Works Act for the proposition that subcontractors must pay their material suppliers. Third, they cite section 14:202 for the proposition that criminal penalties maybe imposed for knowingly failing to apply money received on a subcontract to settle claims for materials. While there is merit to the contention that HCI and National Union should have presented these legal arguments to the Bankruptcy Court, the Court finds that they are not newly raised issues on appeal.

**b. National Union's Liability**

PNB also argues that National Union raises on appeal for the first time an affirmative defense that it has no liability under the payment and performance bonds for any of the amounts due pursuant to the Bankruptcy Court's judgment. After reviewing the available record, the Court finds no evidence that HCI and National Union ever raised this affirmative defense before the Bankruptcy Court. Therefore, the Court will limit its consideration to the purely legal issues associated with this affirmative defense.

**2. PNB's Claim**

██ HCI and National Union contend that PNB improperly raises a claim to recover the September 5, 1997 loan of $30,334.35 to ASI to cover payroll overdrafts, even though the Bankruptcy Court ruled on the issue, because PNB did not raise the issue in its complaint or the pretrial order, and no evidence regarding the issue was presented at trial. This issue, however, is only newly raised if PNB's claim had not been properly before the Bankruptcy Court. Although PNB did not clearly present the claim in its complaint, it identified the $30,000.00 promissory note, which ASI signed as a condition of the loan, as an exhibit to be offered at trial in the pretrial order and subsequently offered the note into evidence without objection. (Pretrial Order at 18; Oct. 28, 1998 Hr'g Tr. at 33, 36.)

As the Fifth Circuit explained in *Portis v. First National Bank of New Albany, Mississippi*, parties may try an issue not presented in the pleadings or pretrial order by express or implied consent. *Portis*, 34 F.3d at 332. A trial by implied consent turns on "whether the parties recognized that the unpleaded issue entered the case at trial, whether the evidence that supports the unpleaded issue was introduced at trial without objection, and whether a finding of trial by consent prejudiced the opposing party's opportunity to respond." *Id.* (quoting *United States v. Shanbaum*, 10 F.3d 305, 312–13 (5th Cir.1994)). The Fifth Circuit then noted that "[a]s a general rule, a party impliedly consents by failing to object to evidence supporting issues that go beyond the pleadings." *Id.*

PNB introduced into evidence the promissory note to substantiate its claim for recovery of the September 5, 1997 loan of $30,334.35 to ASI. The claim is independent of the claims outlined in PNB's complaint, and the note has no evidentiary value with respect to those claims. Accordingly, as HCI and National Union failed to object to the introduction of this evidence, the Court finds that HCI and National Union implied their consent to the Bankruptcy Court's trial of this claim. Therefore, PNB's appeal of the Bankruptcy Court's $30,334.35 determination does not present a new issue for this Court to consider. The Court further notes that both HCI and National Union included the promissory note among their trial exhibits. (Oct. 28, 1998 Hr'g Tr. at 33.)

### D. ASI's Issues

#### 1. Confiscated Equipment

ASI first argues that while HCI was entitled to use ASI's equipment to complete the project, the project is complete, and HCI has not returned the equipment. Accordingly, ASI argues it is entitled to the value of the equipment—$30,600.00. HCI and National Union counter, arguing that Article 13 of the subcontract does not require HCI to pay ASI for the seized equipment and materials.

Article 13 of the Subcontract provides:

> Should Subcontractor at any time breach this agreement or fail to prosecute its work with promptness, diligence and efficiency, or fail to perform any of the requirements herein, Contractor may ... terminate employment of Subcontractor, enter upon the premises and take possession, for the use in completing the work, of all materials, supplies, tools, equipment and appliances of Subcontractor thereon and complete the work ... and be liable to Subcontractor for no further payment under this agreement until final payment is due and only to the extent that the unpaid balance of amount to be paid under the Subcontract exceeds damages and expenses of Contractor in finishing the work.

(HCI & National Union's Opp'n ASI's Appeal Brief at 9.) Article 13 not only empowered HCI to take possession of ASI's equipment to complete the project, but also provided that HCI would not be liable to ASI for any further payment unless the unpaid balance owed to ASI exceeded HCI's damages and expenses.

Although the Bankruptcy Court denied ASI any equipment damages because it "offered no grounds for not enforcing the contract terms," the Bankruptcy Court did not explain how or why it arrived at that conclusion. (Bankr.Ct.'s Mem. Op. at 20.) Notwithstanding the brevity of the Bankruptcy Court's determination, ASI fails to address the subcontract's provision that HCI would not be liable to ASI for any further payment if the damages and expenses exceeded the unpaid balance owed to ASI. As ASI does not ask for the return of its equipment and seeks monetary damages instead, the Bankruptcy Court apparently determined that the general damages and expenses HCI incurred in finishing the work exceeded ASI's right

to any further payment and offset ASI's claim for damages against HCI's general damages and expenses. ASI does not demonstrate why that determination is clearly erroneous. Therefore, the Court denies ASI's demand for the value of the seized equipment and affirms the Bankruptcy Court's determination. (*Id.* at 19–20.)

## 2. Termination for Cause

ASI argues that HCI could not have terminated it for cause because HCI took over performance of the subcontract, including financial responsibility, from ASI and continued to do so after the one-month trial period. The only responsibility left to ASI was to furnish its equipment and a supervisor, which, ASI asserts, it did. Accordingly, ASI concludes that there was no default and that HCI necessarily terminated ASI without cause. ASI rejects HCI's explanation at trial that ASI did not have the requisite financing to complete its obligations, arguing that HCI knew ASI would have had the necessary money if HCI had paid ASI for the extras and change orders.

 Whether HCI had cause to terminate ASI is a factual issue, which is subject to a clearly erroneous standard of review. The Bankruptcy Court found that "HCI probably had cause to terminate [ASI] under Article 13 of the contract for 'failure to prosecute its work with promptness, diligence and efficiency' and failing to comply with the other contractual requirements." (HCI & National Union's Opp'n ASI's Appeal Brief at 5.) Further, there was evidence at trial of ASI's use of unapproved paint, failure to pay its material suppliers, poor workmanship, inability to properly touch-up, and incapability of making its payroll and paying its material suppliers.

To overcome the Bankruptcy Court's factual determination that HCI terminated ASI with cause, ASI must persuade this Court that that conclusion is clearly erroneous. Despite ASI's assertion that HCI's assumption of ASI's responsibilities cured the defaults, the Bankruptcy Court found that "problems still continued" and that "most of the defaults, certainly the financial defaults, had only been remedied by HCI basically taking over the work." (Bankr.Ct.'s Mem. Op. at 8, 10.) The Bankruptcy Court further found that "the financial records submitted as evidence by [ASI] are woefully insufficient to verify that [ASI] could have financed job completion." (*Id.* at 11.) ASI presents this Court no evidence showing that the Bankruptcy Court's conclusions were clearly erroneous. Therefore, the Court affirms the Bankruptcy Court's finding that HCI terminated ASI for cause.

## 3. Damages

ASI asserts that the Bankruptcy Court should have awarded it damages. The premise of ASI's argument is that damages should be awarded to the non-defaulting party of a terminated contract. As the Court affirms the Bankruptcy Court's finding that HCI terminated ASI for cause, the Court rejects ASI's claim for damages.

## 4. Extra Work, Change Orders, and Retainage

ASI asserts that it is entitled to compensation for extra work, change orders, and retainage. Specifically, ASI claims:

| | |
|---|---:|
| Doors | $ 7,100 |
| Beams | $ 96,000 |
| Spice, Inc. | $ 8,000 |
| Accent Walls | $ 16,000 |
| Boutte Approved | $ 40,000 |
| 300 Windows | $ 64,365 |
| Additional | $153,000 |
| | $384,465 |

(ASI's Appeal Brief at 19.)

The Bankruptcy Court found that HCI and ASI agreed that HCI owed ASI for the following extra work:

| | |
|---|---:|
| Doors | $ 7,100 |
| Spice, Inc. | $ 8,000 |
| Accent Walls | $ 16,000 |
| Boutte Approved | $ 24,000 |
| 300 Windows | $ 64,365 |
| | $119,465 |

(Bankr.Ct.'s Mem. Op. at 9.) The Bankruptcy Court rejected ASI's $96,000 claim for painting exposed beams because it "was outside the scope of the contract and the work done by [ASI] was at its own expense." (*Id.* at 10.) The Bankruptcy Court further found that with respect to the remaining discrepancies:

> the invoices offered by [ASI] in support of its figures, both for the Boutte approvals and for the other "extras," are impossible to sort out. Some appear to have already been included in other totals, some are dated from 1998, long after [ASI] was terminated from the Project, and other simply cannot be deciphered. Thus, the Court can only use [the $119,465.00 in extras that HCI and ASI agreed were due], as they are substantiated.

(*Id.* at 9–10.) Of note, the Bankruptcy Court took the agreed $119,465 figure into account when it calculated that HCI did not owe ASI any money. (*Id.* at 19–20.)

ASI does not address any of the Bankruptcy Court's findings, let alone demonstrate why they are clearly erroneous. Merely reiterating failed arguments does not satisfy ASI's burden. Accordingly, the Court affirms the Bankruptcy Court's rejection of ASI's claims to compensation for extra work, change orders, and retainage.

### 5. Interest and Attorneys Fees

ASI argues that the Bankruptcy Court should have awarded it interest and attorneys fees. While ASI presents this claim as its fifth appeal issue in its brief, ASI fails to justify its claim. As the Court has denied ASI's appellate claims for compensation and damages, the issue of interest is moot. Furthermore, in the absence of any proffered justification for attorneys fees, the Court affirms the Bankruptcy Court's denial thereof.

### E. PNB's Issues

### 1. PNB's Entire Security Interest

PNB first argues that it should recover its entire security interest lien in the amount of $188,349.99. It contends that the Bankruptcy Court improperly deducted $68,936.34 (that HCI allegedly paid PNB) and $74,559.55 (retainage) because, pursuant to Louisiana Revised Statutes 10:9–318(3), HCI is not entitled to setoff monies paid to persons other than PNB after HCI received notice of ASI's assignment of its accounts receivable to PNB. PNB further argues that the $68,936.34 deduction is improper because there is no evidence that HCI paid $68,936.34 to PNB and that HCI never proposed offsetting this amount in its post-trial memoranda. PNB also challenges the $74,559.55 deduction, arguing (1) that HCI produced no evidence at trial that the $74,559.55 retained applied to the invoices, (2) that HCI had no right to retainage because there was no written contract so providing when ASI assigned its accounts receivable to HCI, (3) that, even if HCI had been entitled to retainage, the project is complete, and HCI has no right to continue withholding the retained monies, and (4) that retainage of ten percent of the billing is $18,835.00, not $74,559.55.

### a. $68,936.34 Setoff

PNB first challenges the $68,936.34 setoff, arguing there is no evidence that HCI paid that money to PNB. The Bankruptcy Court, however, found the requisite evidence in PNB's own exhibit. (Bankr.Ct.'s Mem. Op. at 6, 15.) As PNB fails to show why that finding is clearly erroneous, the Court affirms the Bankruptcy Court's $68,936.34 setoff.

### b. $74,559.55 Retainage Setoff

■ PNB also challenges the Bankruptcy Court's setoff of $74,559.55 for retainage. The retainage at issue is a product of two contractual provisions between HCI and ASI. First, Article 16 of the subcontract provides:

> [HCI] agrees to pay to [ASI] the sum of ONE MILLION, TWO HUNDRED AND FORTY–SEVEN THOUSAND, THREE HUNDRED AND EIGHTY–

SEVEN AND ⁰⁰⁄₁₀₀ DOLLARS ($1,247,-387.00) for the work, said amount to be paid as follows: Ninety percent (90%) of value of work completed and accepted each month for which payment has been made by Owner to [HCI], to be paid to [ASI] within twenty (20) days after such payment, except that final payment will be made by HCI to [ASI] immediately following final completion and acceptance of such materials and work by Owner, and final payment received by [HCI] and after satisfactory evidence has been furnished to [HCI] by [ASI] that all labor and material for use on its work have been paid in full.

(HCI's Memo Opp'n Mot. Partial Summ. J., Ex. A at 2.) Second, a special condition provides for "retainage of 10% of each billing shall be withheld until completion and acceptance of the owner." (PNB's Appeal Brief at 24.) Testimony at trial explained that the $74,559.55 figure is ten percent of the approximately $740,000 of contract work that had been completed before HCI realized in May 1997 that it had neglected to withhold retainage. (Oct. 28, 1998 Hr'g Tr. at 141–42.) The Bankruptcy Court found that the subcontract allowed HCI to retain $74,559.55. (Bankr. Ct.'s Mem. Op. at 6, 15.)

PNB presents no evidence that it is entitled to this retainage. HCI terminated ASI for cause and incurred expenses completing the project. Accordingly, by the terms of the contract, HCI did not owe ASI the retainage. As the retained monies were not owed, they were never a receivable that ASI could assign to PNB. Furthermore, any claims PNB may assert to the retainage under ASI's assignment of its contractual rights are barred by Article 11 of the subcontract, which prohibits assignment of those rights without HCI's prior written approval. As it is undisputed that HCI never approved the assignment, ASI could not assign those rights to PNB. Therefore, the Court affirms the Bankruptcy Court's $74,559.55 deduction.

### 2. $30,334.35 Payroll Loan

■■■■ PNB argues that it should recover $30,334.35 advanced to ASI on September 5, 1997 to cover ASI's payroll and secured by an assignment of ASI's accounts receivable. The Bankruptcy Court apparently exercised its equitable powers and denied recovery, reasoning that

by September 5, 1997, HCI had already put [ASI] in default on the contract. Yet, even in view of this, PNB loaned [ASI] more money albeit that the loan was to cover payroll.... That [PNB] is entitled to recover on a note executed when [ASI] was already in financial trouble is not appropriate. The [Bankruptcy] Court will not award this amount to PNB.

(Bankr.Ct.'s Mem. Op. at 17.) PNB contends the Bankruptcy Court ruled in error because although HCI had put ASI on notice of default on August 7, 1997, ASI continued to work on the project and submit invoices through PNB until HCI terminated it on December 4, 1997. The fatal flaw in PNB's reasoning is that when HCI notified ASI that it was in default, one of the default triggers was ASI's financial troubles. Indeed, the Bankruptcy Court found that HCI took over supervision of ASI's work, took possession of ASI's equipment and materials, paid ASI's vendors directly, assimilated ASI's employees, and handled the accounting for payments on the contract. Merely arguing that ASI continued to work on the project and submitted invoices to PNB does not prove that PNB is entitled to recover $30,334.35—especially when PNB loaned the money less than a month after HCI notified ASI that it was in default. Accordingly, the Court rejects PNB's claim and affirms the Bankruptcy Court's determination.

### 3. $74,559.55 Retainage

PNB argues that the Bankruptcy Court improperly setoff the $74,559.55 retainage from the judgment. For the reasons already explained, the Court rejects PNB's

argument and affirms the Bankruptcy Court's finding.

#### 4. $68,936.34 Credit

PNB argues that the Bankruptcy Court incorrectly credited HCI $68,936.34. For the reasons already explained, the Court rejects PNB's argument and affirms the Bankruptcy Court's finding.

#### 5. Interest, Attorneys Fees, & Costs

PNB argues that it should have been awarded interest from the date each invoice became due and attorney's fees and costs. Although PNB seeks interest from the date each invoice became due, it does not challenge the Bankruptcy Court's finding that HCI has paid the full amount of the invoices that form the basis of PNB's complaint. (Bankr.Ct.'s Mem. Op. at 6.) Indeed, the premise of PNB's argument is that HCI should have routed the payments though PNB, not that HCI never paid the invoices. Accordingly, as HCI's obligation to route payments through PNB required judicial determination, the Court finds that the Bankruptcy Court did not err in awarding interest from the date of judicial demand.

"As a general rule, attorney fees are not allowed except where authorized by statute or contract." *Nassif v. Sunrise Homes, Inc.*, 739 So.2d 183, 185 (La.1999). PNB, however, posits no statutory or contractual authorization. Instead, it merely asserts that HCI's failure to pay PNB the receivables caused PNB to incur these attorney fees and costs. Therefore, the Court rejects PNB's claims for attorney fees and costs and affirms the Bankruptcy Court's determination.

#### F. HCI & National Union's Issues

#### 1. $24,982.10 Setoff

HCI and National Union argue that the Bankruptcy Court erred when it held that HCI is not entitled to deduct the $24,982.10 paid by HCI to ASI's suppliers on ASI's account. They contend that a general contractor such as HCI may pay its subcontractor's material suppliers directly, despite the subcontractor's assignment of its accounts receivable.

This argument neglects the import of Louisiana Revised Statutes section 10:9–318(3), which requires an account debtor to pay an assignee upon notification that the amount due or to become due has been assigned. LA.REV.STAT. § 10:9–318(3). While ASI's material suppliers billed ASI for their services, ASI incorporated those bills into its invoices to HCI. HCI owed *ASI*, not the material suppliers, the balance of those invoices. Accordingly, when HCI received notice on June 11, 1997 that ASI had assigned its accounts receivable to PNB, section 10:9–318(3) required HCI to pay PNB all monies due ASI. None of HCI's arguments overcomes this unambiguous statutory requirement. Therefore, the Court affirms the Bankruptcy Court's refusal to setoff $24,982.10.

#### 2. Anti–Assignment Clause

HCI and National Union argue that the Bankruptcy Court erred when it found that the anti-assignment clause in the contract was ineffective to prohibit the assignment of ASI's accounts receivable pursuant to Louisiana Revised Statutes section 10:9–318(4) They reurge the reasoning of *Mingledorff's, Inc. v. Hicks* that section 10:9–318(4) is inapplicable because the subcontract was for services and labor, not the sale of goods. *See Mingledorff's, Inc. v. Hicks*, 133 Ga.App. 27, 209 S.E.2d 661 (1974).

While the subcontract between HCI and ASI could be characterized as a contract for the performance of services and labor, not the sale of goods, such a characterization does not necessarily preclude application of the provisions of Title Ten, Chapter Nine of the Louisiana Revised Statutes. Subject to the exclusions identified in section 10:9–104, Chapter Nine applies "to any transaction (regardless of form) which is intended to create a security interest in

personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts." LA. REV.STAT. § 10:9–102(1)(a). In other words, "the principal test" is whether the transaction intended to have effect as security. *Id.* § 10:9–102 cmt. 1. Section 10:1–201(37) defines "Security interest" as "an interest in personal property ... which secures payment or performance of an obligation[,] ... [and t]he term also includes, where the context so requires, the interest of a buyer of accounts ... which is subject to Chapter 9."

Here, ASI assigned its accounts receivable to PNB as security for its cash manager line of credit. Accordingly, the assignment falls within the ambit of section 10:9–102(1)(a), even though Chapter Nine may not apply to the underlying transaction. *See id.* § 10:9–102 cmt. 2 ("An assignment of accounts ... as security for an obligation is covered by subsection (1)(a)."); *id.* § 10:9–102(3) ("The application of this Chapter to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this Chapter does not apply."). Therefore, the Court rejects the argument that the assignment of the accounts receivable was invalid.[1]

### 3. National Union's Liability

HCI and National Union argue (1) that no evidence was ever introduced establishing National Union's liability under the payment or performance bond and (2) that PNB has no claim for any monies under the bond. As they raise this affirmative defense for the first time on appeal, the Court will only review the purely legal issues for plain error.

While the third uncontested material fact in the pretrial order states that HCI and Cotton Mill Limited Partnership recorded a performance and a payment bond

issued by National Union, that does not establish the terms and conditions of the bonds. (Pretrial Order at 11.) As the bonds were never before the Bankruptcy Court, it never had reason to determine National Union's liability vel non. Accordingly, in the absence of any factual foundation, any discussion of purely legal issues is a meaningless academic exercise. Therefore, the Court finds that whether National Union is liable under the performance and payment bonds is an issue that the Court cannot resolve.

### III. Conclusion

For the foregoing reasons, the Court affirms the Bankruptcy Court.

---

1. The Court's ruling does not mean that the contract itself was assignable. *See* discussion *supra* Part II.E.1.b.